UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

|  |  |
|---|---|
| KIRK ROBERTS, JOHN CURTIS, TERRENCE COLVIN-WILLIAMS, REGINALD BRADLEY, DAVID COLEMAN, and CARL McROBERTS JR., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSAM TRUCKING, INC.,<br><br>Defendant. | Civil Action No. 2:21-cv-2073<br><br>**JURY DEMANDED** |

## CLASS AND COLLECTIVE ACTION COMPLAINT

**I.    INTRODUCTION**

1.    This is an action brought on behalf of individuals who have worked for Defendant TransAm Trucking, Inc. (hereainfter "TransAm") as truck drivers and have been subject to the unlawful practices described herein, including nonpayment of wages and minimum wages and unfair and deceptive business practices, in violation of state and federal law.  As set forth in more detail below, the named plaintiffs bring this action on behalf of themselves and all other similarly situated individuals and seek recovery of all unpaid wages and minimum wages and damages for unfair and deceptive business practices.  Plaintiffs also seek liquidated damages, civil penalties as appropriate, appropriate ancillary relief, interest, costs and attorneys' fees, and all other relief to which they are entitled.

1

2. First, TransAm has failed to pay truck drivers all minimum wages to which they are entitled for orientation and training time, in violation of the federal Fair Labor Standards Act (FLSA).

3. Second, TransAm has engaged in unfair and/or deceptive business practices under the Kansas Consumer Protection Act (KCPA) to induce individuals to become lease purchase drivers, including but not limited to recruiting individuals to come to orientation by stating that company driver jobs are available and then only telling them that there are no company driver jobs available after they have traveled hundreds or thousands of miles to attend orientation, leaving them with no choice but to become lease purchase drivers or to pay their own way home.

**II.   PARTIES**

4. Plaintiff Kirk Roberts is an adult resident of Nottingham, Maryland. He attended TransAm's truck driver orientation in Rockwall, Texas in approximately March 2020 and worked as a lease purchase truck driver for TransAm for several months in 2020. He is an "employee" of Defendant within the meaning of the FLSA.

5. Plaintiff John Curtis is an adult resident of Springfield, Missouri. He attended TransAm's truck driver orientation in Olathe, Kansas in 2019 and again in Rockwall, Texas in 2020. He is an "employee" of Defendant within the meaning of the FLSA.

6. Plaintiff Terrence Colvin-Williams is an adult resident of Stockbridge, Georgia. He attended TransAm's truck driver orientation in Tampa, Florida in approximately January 2020 and worked as a lease purchase truck driver for TransAm

until approximately April 2020.  He is an "employee" of Defendant within the meaning of the FLSA.

7. Plaintiff Reginald Bradley is an adult resident of Gainesville, Florida.  He attended TransAm's truck driver orientation in Olathe, Kansas and worked as a lease purchase truck driver for TransAm until approximately 2019.  He is an "employee" of Defendant within the meaning of the FLSA.

8. Plaintiff David Coleman is an adult resident of Pocomoke City, Maryland.  He attended TransAm's truck driver orientation in Tampa, Florida in approximately September 2019 and worked as a company truck driver for TransAm until approximately January 2020.  He is an "employee" of Defendant within the meaning of the FLSA.

9. Plaintiff Carl McRoberts Jr. is an adult resident of Frankfort, Kentucky.  He attended TransAm's truck driver orientation in Rockwall, Texas in approximately February 2020 and worked as a lease purchase truck driver for TransAm until April 2020.  He is an "employee" of Defendant within the meaning of the FLSA.

10. For the FLSA claims, Plaintiffs bring this action on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

11. Pursuant to 29 U.S.C. § 216(b), named Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr.

consent to sue as plaintiffs under the Fair Labor Standards Act. Their consent to sue forms are attached to this Complaint as Exhibit 1.

12. Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr., and all others similarly situated are individually covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

13. For the Kansas Consumer Protection Act claim, Plaintiffs bring this action on behalf of all similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification.

14. Defendant TransAm Trucking, Inc. is a Missouri corporation that employs individuals (including Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr.) as truck drivers. Defendant TransAm Trucking, Inc. has revenues in excess of $500,000 per year and has employed two or more persons, including the named Plaintiffs, who handled and worked on materials which had been moved in interstate commerce. Defendant TransAm Trucking, Inc. is an "employer" of Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr., and other similarly situated drivers within the meaning of the FLSA.

### III. JURISDICTION AND VENUE

15. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this case arises under the laws of the United States. Specifically, this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

16. The Court also has jurisdiction over the claims brought under the laws of Kansas pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some of the named plaintiffs are citizens of States different from the Defendant.

17. Alternatively, Plaintiff requests that this Court exercise supplemental jurisdiction over their claims under the laws of Kansas pursuant to 28 U.S.C. § 1367.

18. Venue is proper pursuant to 28 U.S.C. § 1391(b): the Defendant resides in the State of Kansas for venue purposes and/or is subject to the Court's personal jurisdiction in that it has substantial contacts with and conduct business in the State of Kansas.

### IV. FACTS

**A. Facts relating to Defendant's corporate structure**

19. TransAm Trucking, Inc. operates as a trucking company.

20. TransAm Trucking, Inc. is a Missouri corporation. Its principal office/company headquarters is located in Olathe, Kansas.

21. The nature of TransAm Trucking, Inc.'s business is "Transportation-Common Carrier."

**B.     Facts relating to unpaid orientation**

22.     TransAm recruits individuals to work as truck drivers.

23.     TransAm requires individuals to attend orientation for several days prior to beginning truck driving for TransAm.

24.     The orientation sessions occur in various facilities owned and/or operated by TransAm, including facilities in Olathe, Kansas, Rockwall, Texas, and Tampa, Florida.

25.     The orientation program typically lasts approximately three to four days and consists of classroom training and some training on the trucks.

26.     For some individuals, orientation is then followed by several days or weeks of over-the-road training with a trainer truck driver.

27.     TransAm has not paid Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr., and other similarly situated individuals all minimum wages owed to them for attending orientation and subsequent training.

28.     The initial orientation sessions are either unpaid or paid at a rate that is so low that it does not compensate individuals at the federal minimum wage for all hours worked.

29.     Plaintiff Kirk Roberts attended orientation in Rockwall, Texas and was not compensated at full minimum wage for all time at orientation.

30. Plaintiff John Curtis attended orientation in Olathe, Kansas and again in Rockwall, Texas, and he was not compensated at full minimum wage for all time at orientation.

31. Plaintiff Terrence Colvin-Williams attended orientation in Tampa, Florida, and he was not compensated at full minimum wage for all time at orientation.

32. Plaintiff Reginald Bradley attended orientation in Olathe, Kansas, and he was not compensated at full minimum wage for all time at orientation.

33. Plaintiff David Coleman attended orientation in Tampa, Florida, and he was not compensated for time spent at orientation.

34. Plaintiff Carl McRoberts Jr. attended orientation in Rockwall, Texas and was not compensated at full minimum wage for all time at orientation.

35. The individuals attending orientation are employees of Defendant during orientation.

36. Drivers often sign contracts to drive trucks for Defendant during orientation.

37. The orientation program is conducted by TransAm employees and agents and uses materials developed by TransAm.

38. The substance of the orientation program includes learning about and being trained on TransAm policies, procedures, and systems.

39. TransAm policies and procedures are distributed to drivers at orientation.

40. Drivers complete new hire paperwork for TransAm at orientation.

41. Orientation also includes a skills assessment and a pre-employment drug screen.

42. At the end of orientation, drivers get their driver IDs, meet with their managers and/or trainers, and typically receive their initial driving assignments.

43. The drivers are expected to continue working for TransAm as a truck driver after completion of orientation.

44. Some drivers are also required to go through over-the-road training, driving in a truck with a trainer driver for several days or weeks after orientation.

45. Plaintiff John Curtis did over-the-road training with a trainer driver for several days after orientation, for which he was not compensated at the full federal minimum wage for all compensable hours.

46. The orientation and training primarily benefit TransAm, because, *inter alia*, it prepares drivers to begin driving for TransAm, trains them in TransAm-specific policies and procedures, introduces them to important TransAm managerial employees, and assigns them their initial driving jobs, etc.

47. Under the FLSA, Defendant is required to pay Plaintiffs and other truck drivers minimum wages for all work they perform.

48. Defendant has failed to compensate Plaintiffs and other truck drivers for all hours worked during orientation at the federal minimum wage.

49. Defendant's violations of the FLSA, as described herein, are willful and in reckless disregard for their employees' rights under the FLSA.

### C.     Facts relating to consumer fraud under the KCPA.

50. Defendant has induced individuals to attend orientation to become truck drivers for TransAm through the false promise that the individuals will be able to work as "company drivers" (meaning that they will be W2 employees of Defendant), when in fact Defendant pressures the individuals into working as "lease purchase drivers" (classified as independent contractors and required to pay for their trucks and other expenses through wage deductions, *inter alia*) instead and/or only offers drivers lease purchase driver jobs and refuses to provide them with the promised company driver jobs.

51. For example, named plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr. were all told by TransAm recruiters that company driver jobs were available and went to orientation with and/or because of that representation.

52. During orientation, Plaintiff Kirk Roberts and the other drivers with whom he attended orientation were pressured multiple times into switching from company driver to lease purchase driver positions.

53. At the end of orientation, TransAm agents informed Roberts that there were no trucks available for company driver positions, and he and others in his orientation group would have to wait around indefinitely for a truck for a company driver job or would have to sign on as lease purchase drivers to start driving right away.

54. On information and belief, the representation that there were no company trucks available was not accurate and/or was misleading.

55. Plaintiff John Curtis was told by a recruiter that company driver jobs were available, but when he got to orientation in Olathe, Kansas in 2019, the instructor told him that there are no company driver jobs, only lease purchase driver jobs, and the instructor stated that he did not know why TransAm kept telling people that company driver positions were available.

56. Curtis ended up leaving orientation without taking a position because TransAm did not provide him with a company driver position.

57. Curtis attended orientation again in 2020 in Rockwall, Texas, after a recruiter told him that TransAm had company driver positions available.

58. However, at the end of that orientation, Curtis was again told that there were no company driver positions available and was pressured into becoming a lease purchase driver.

59. Curtis did not take a position with TransAm after orientation.

60. Plaintiff Terrence Colvin-Williams was contacted by a TransAm recruiter about a company driver position was sent to orientation in Tampa, Florida for a company driver position.

61. Colvin-Williams was pressured into being a lease purchase driver once he got to orientation.

62. Plaintiff Reginald Bradley was also told by a TransAm recruiter that TransAm had company driver positions available.

10

63. However, when he got to orientation, he was told there were only lease purchase driver positions, and he had no choice but to accept a lease purchase driver position.

64. Plaintiff Carl McRoberts Jr. was initially contacted by a TransAm recruiter about a company driver job.

65. At orientation, however, McRoberts' instructor informed him and the others in his orientation group that there were actually no company driver jobs available and they would have to become lease purchase drivers if they wanted to start working right away.

66. On information and belief, many individuals recruited by TransAm with the promise of company driver positions have little choice but to sign on as lease purchase drivers, because they are stranded at the orientation site with no way to get home and often without the financial means to do so.

67. Defendant is a supplier under the KCPA because it solicits, engages in or enforces consumer transactions in the ordinary course of business, including recruiting individuals to work as truck drivers for it.

68. Defendant does this recruitment in Kansas, including advertising, soliciting, and recruiting for drivers from Kansas, making calls and sending emails and text messages to potential drivers from Kansas, and developing and implementing its plans for advertising, solicitation, and recruitment of drivers in Kansas.

69. During recruitment, TransAm represents to drivers that they can attend orientation to become company drivers.

70. Drivers go to orientation—often traveling hundreds or thousands of miles from their homes—with the understanding that they can get jobs with TransAm as company drivers.

71. During and after orientation, Defendant attempts to induce drivers into becoming lease purchase drivers instead of company drivers.

72. They do this in several ways, including but not limited to: (a) inaccurately and/or misleadingly representing to drivers that there are no company trucks available; (b) telling drivers that they can start driving right away if they become lease purchase drivers but will have to wait an unspecified and indefinite amount of time to become company drivers; and/or (c) eventually sending drivers home without jobs if they continue to insist that they want to be company drivers.

73. Defendant's statements/representations during and after recruitment and during and after orientation about whether or not there are company driver jobs available constitute deceptive acts and practices under the KCPA.

74. *Inter alia*, Defendant makes representations during recruitment that company driver jobs are available even knowing or with reason to know that company driver jobs are not available and/or will not be offered to the drivers when they attend orientation.

75. Defendant also makes representations during and after orientation that company trucks are not available even if they are available, with the intention of inducing individuals to become lease purchase drivers instead.

76. Defendant's statements/representations during and after recruitment and during and after orientation about whether or not there are company driver jobs available also constitute unconscionable acts and practices under the KCPA.

77. *Inter alia*, Defendant's statements/representations have been made with Defendant's knowledge or reason to know that: (a) the individuals would not receive a material benefit from the transaction (because Defendant in fact would not provide the individuals with company driver jobs); (b) there was no reasonable probability that the individuals would receive the company driver jobs promised to them; and (c) the transaction was excessively one-sided in favor of Defendant, etc.

78. Defendant's deceptive acts and practices and unconscionable acts and practices have been in connection with a consumer transaction, namely the recruitment of individuals to attend orientation and provide services as truck drivers for Defendant.

79. Defendant's actions have caused substantial harm to drivers and have adversely affected their legal rights, including but not limited to: (a) causing individuals to attend and complete orientation and then failing to provide them with the promised job; (b) causing individuals to incur debts, expenses, and deductions from pay as independent contractor drivers that they would not have incurred as company drivers; (c) depriving individuals of wages and minimum wages that they would have received as company drivers; and/or (d) causing individuals to incur the expense of their travel home if they are not given company driver jobs.

80. For example, Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. incurred extensive expenses as lease purchase drivers

that they would not have incurred as company drivers, including but not limited to deductions from earnings that they would not have have paid as company drivers, expenses for maintenance and repairs to the trucks they drove, forfeiture of their last paychecks, and thousands of dollars of debt obligations imposed on them by TransAm after their employment.

81. As lease purchase drivers, Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. and other similarly situated individuals often earned less in net income than they would have earned as company drivers, including some pay periods in which they received no income or were paid less than the federal minimum wage per compensable hour worked.

82. Plaintiff John Curtis ultimately did not take a position with TransAm because they did not provide him with the promised company driver position, causing him to suffer harm and damages including lost time that he spent in orientation and subsequent training and waiting, and the expenses he incurred to travel home from the orientation facilities.

83. Defendant's actions are in violation of the KCPA.

V.    FLSA COLLECTIVE ACTION ALLEGATIONS

84. Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr. assert their claims under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated employees currently and formerly employed by Defendant.

85. Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the collective for which they seek certification under section 216(b) as follows:

> ALL INDIVIDUALS WHO HAVE ATTENDED ORIENTATION AND/OR TRAINING FOR DEFENDANT DURING THE APPLICABLE STATUTORY PERIOD AND HAVE NOT RECEIVED WAGES FOR ALL HOURS WORKED AT THE FEDERAL MINIMUM WAGE.

86. These claims meet the requirements for collective action certification under the FLSA.

87. All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they all attended orientation to become truck drivers for Defendant and all suffered from the same unlawful policies, specifically that they were not paid at least minimum wage for all orientation time.

## VI. KANSAS CONSUMER PROTECTION ACT RULE 23 CLASS ACTION ALLEGATIONS

88. Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. assert the claims under the KCPA on behalf of a class pursuant to Fed. R. Civ. P. 23.

89. Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the following class:

> ALL INDIVIDUALS WHO WERE TOLD DURING RECRUITMENT THAT COMPANY DRIVER JOBS WERE AVAILABLE BUT WHO DID NOT RECEIVE COMPANY DRIVER JOBS DURING OR AFTER ORIENTATION.

90. All potential Rule 23 plaintiffs are similarly situated with respect to the KCPA claims because they all suffered from the same unlawful policies, including:

   a. Policies that TransAm recruiters make or are allowed to make representations during recruitment that company driver jobs are available;

   b. Policies that TransAm employees make or are allowed to make representations during and after orientation that company driver jobs are not available and/or statements pressuring individuals to take lease purchase driver positions instead; and

   c. Harm to individuals because of these representations.

91. The members of the class are so numerous that joinder of all of them is impracticable. On information and belief, the number of class members is in the thousands.

92. There are issues of law and fact common to all class members, because Defendant's recruitment, orientation, and job placement practices apply to all class members. The common questions of law and fact predominate over any questions affecting individual class members.

93. The claims of the named Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

94. The named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

16

95. The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class. The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiffs as well as every absent member of the proposed class.

96. A class action is superior in this case for several reasons including, but not limited to, that: the case challenges uniform deceptive practices; many class members may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claim.

97. Plaintiffs have given notice of this action to the Kansas Attorney General, pursuant to K.S. § 50-634(g).

## COUNT I – FAIR LABOR STANDARDS ACT (FLSA)

Defendant's conduct, in failing to pay its drivers at least minimum wage for all hours worked during orientation violates the FLSA, 29 U.S.C. § 201, et seq. This claim is brought on behalf of the named Plaintiffs and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

## COUNT II – KANSAS CONSUMER PROTECTION ACT

Defendant's conduct, as set forth above, violates the KCPA. Through the actions described above, Defendant has violated the provisions of KCPA, including K.S. §§ 50-626 and 50-627. This claim is brought on behalf of the named Plaintiffs and all other similarly situated individuals pursuant to K.S. § 50-634.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a jury for all issues so triable.

## LOCATION OF JURY TRIAL

The location of this trial should be Kansas City, Kansas.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter the following relief:

a. Certification of an opt-in class pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*;

b. Permission for Plaintiffs to notify similarly situated individuals of their right to opt in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

c. An award of damages for all minimum wages that are due to the named Plaintiffs and all similarly situated individuals under the FLSA;

d. Statutory liquidated damages under the FLSA;

e. A finding that Defendant's violation of the FLSA was willful and that, therefore, the statute of limitations for the FLSA claim is three years;

f. Certification of the KCPA claim as a class action under Fed. R. Civ. P. 23;

g. An award of damages under the KCPA relating to aggrievement or legal harm caused by Defendant's deceptive and/or unconscionable acts and practices;

h. A declaratory judgment that Defendant's actions, as set forth herein, are unlawful under the KCPA;

i. Appropriate ancillary relief under the KCPA;

j. A finding that Defendant's violation of the KCPA was willful;

k. Civil penalties pursuant to K.S. § 50-636, as appropriate;

l. An injunction preventing Defendant from continuing the legal violations described herein, including but not limited to non-payment of minimum wages for orientation and training and deceptive and/or unconscionable acts and practices relating to recruitment of drivers and availability of company driver positions;

m. An award of attorneys' fees and costs;

n. Pre- and post-judgment interest; and

o. Any other relief to which the named Plaintiffs and similarly situated individuals may be entitled.

Respectfully submitted,

KIRK ROBERTS, JOHN CURTIS, TERRENCE COLVIN-WILLIAMS, REGINALD BRADLEY, DAVID COLEMAN, and CARL McROBERTS JR., on behalf of themselves and all others similarly situated,

By their attorneys,

*/s/ Brendan J. Donelon*
Brendan J. Donelon, KS #17420
DONELON, P.C.
4600 Madison, Ste. 810
Kansas City, Missouri 64112
816-221-7100
Fax: 816-709-1044
brendan@donelonpc.com

Hillary Schwab, BBO #666029*
Brant Casavant, BBO #672614
Rachel Smit, BBO #688294*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
www.fairworklaw.com
hillary@fairworklaw.com,
brant@fairworklaw.com,
rachel@fairworklaw.com

*motion for pro hac vice to be filed*

Dated: February 10, 2021