**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

_____

|  |  |  |
|---|---|---|
| | ) | |
| KIRK ROBERTS, JOHN CURTIS, | ) | |
| TERRENCE COLVIN-WILLIAMS, | ) | |
| REGINALD BRADLEY, DAVID COLEMAN, | ) | |
| and CARL McROBERTS JR., on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 2:21-cv-02073-JWB-GEB |
| v. | ) | |
| | ) | |
| TRANSAM TRUCKING, INC. | ) | **JURY DEMANDED** |
| and OLATHE NOBLE EQUIPMENT | ) | |
| LEASING, INC., | ) | |
| Defendants. | ) | |

_____ )

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

## I.      INTRODUCTION

1.      This is an action brought on behalf of individuals who have worked for

Defendant TransAm Trucking, Inc. (hereainfter "TransAm") as truck drivers and have

been subject to the unlawful practices described herein, including nonpayment of

wages and minimum wages and unfair and deceptive business practices, in violation of

state and federal law.  As set forth in more detail below, the named plaintiffs bring this

action on behalf of themselves and all other similarly situated individuals and seek

recovery of all unpaid wages and minimum wages and damages for unfair and

deceptive business practices.  Plaintiffs also seek liquidated damages, civil penalties as

appropriate, appropriate ancillary relief, interest, costs and attorneys' fees, and all other

relief to which they are entitled.

1

2.　　First, TransAm has failed to pay truck drivers all minimum wages to which they are entitled for orientation and training time, in violation of the federal Fair Labor Standards Act (FLSA) and, for individuals who have attended orientation in Florida, in violation of the Florida Constitution, Article X, Section 24.

3.　　Second, TransAm has engaged in unfair and/or deceptive business practices under the Kansas Consumer Protection Act (KCPA) to induce individuals to become lease purchase drivers, including but not limited to recruiting individuals to come to orientation by stating that company driver jobs are available and then only telling them that there are no company driver jobs available after they have traveled hundreds or thousands of miles to attend orientation, leaving them with no choice but to become lease purchase drivers or to pay their own way home.

4.　　Third, TransAm and Defendant Olathe Noble Equipment Leasing, Inc. (hereinafter "ONE Leasing") have misclassified lease purchase drivers as independent contractors when they are, in fact, employees and have made unlawful deductions from their wages in violation of the Kansas Wage Payment Act (KWPA).

5.　　Fourth, TransAM and ONE Leasing (hereinafter referred to collectively as "Defendants") have miclassified lease purchase drivers as independent contractors when they are, in fact, employees; have made unlawful deductions from lease purchase drivers' wages, bringing their wage rate below the federal minimum; and have failed to pay lease drivers at least the federal minimum wage for all hours worked in violation of the FLSA.

6.      Fifth, TransAm has failed to pay company drivers at least the federal minimum wage for all hours worked, in violation of the FLSA.

**II.    PARTIES**

7.      Plaintiff Kirk Roberts is an adult resident of Nottingham, Maryland.  He attended TransAm's truck driver orientation in Rockwall, Texas in approximately March 2020 and worked as a lease purchase truck driver for TransAm for several months in 2020.  He is an "employee" of Defendant within the meaning of the FLSA.

8.      Plaintiff John Curtis is an adult resident of Springfield, Missouri.  He attended TransAm's truck driver orientation in Olathe, Kansas in 2019 and again in Rockwall, Texas in 2020.  He is an "employee" of Defendant within the meaning of the FLSA.

9.      Plaintiff Terrence Colvin-Williams is an adult resident of Stockbridge, Georgia.  He attended TransAm's truck driver orientation in Tampa, Florida in approximately January 2020 and worked as a lease purchase truck driver for TransAm until approximately April 2020.  He is an "employee" of Defendant within the meaning of the FLSA.

10.     Plaintiff Reginald Bradley is an adult resident of Gainesville, Florida.  He attended TransAm's truck driver orientation in Olathe, Kansas and worked as a lease purchase truck driver for TransAm until approximately 2019.  He is an "employee" of Defendant within the meaning of the FLSA.

11.     Plaintiff David Coleman is an adult resident of Pocomoke City, Maryland. He attended TransAm's truck driver orientation in Tampa, Florida in approximately

September 2019 and worked as a company truck driver for TransAm until approximately January 2020.  He is an "employee" of Defendant within the meaning of the FLSA.

12.     Plaintiff Carl McRoberts Jr. is an adult resident of Frankfort, Kentucky. He attended TransAm's truck driver orientation in Rockwall, Texas in approximately February 2020 and worked as a lease purchase truck driver for TransAm until April 2020.  He is an "employee" of Defendant within the meaning of the FLSA.

13.     For the FLSA orientation claim, Plaintiffs bring this action on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

14.     Pursuant to 29 U.S.C. § 216(b), named Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr. consent to sue as plaintiffs under the Fair Labor Standards Act.  Their consent to sue forms were attached to the original Complaint as Exhibit 1.

15.     Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr., and all others similarly situated are individually covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

16.     For the Florida orientation minimum wage claim, Plaintiff Terrence Colvin-Williams and Plaintiff David Coleman each was an "employee" of TransAm within the meaning of Article X, Section 24 of the Florida Constitution.

17.     For the Florida orientation minimum wage claim, Plaintiffs Terrence Colvin-Williams and David Coleman bring this action on behalf of all similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification.

18.     For the Kansas Consumer Protection Act claim, Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. bring this action on behalf of all similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification.

19.     For the Kansas Wage Payment Act claim, Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. bring this action on behalf of all similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed class meetings the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification.

20.     For the FLSA lease purchase driver minimum wage claim, Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. bring this action on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

21.  For the FLSA company driver minimum wage claim, Plaintiff David Coleman brings this action on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

22.  Defendant TransAm Trucking, Inc. is a Missouri corporation that employs individuals (including Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr.) as truck drivers.  Defendant TransAm Trucking, Inc. has revenues in excess of $500,000 per year and has employed two or more persons, including the named Plaintiffs, who handled and worked on materials which had been moved in interstate commerce.  Defendant TransAm Trucking, Inc. is an "employer" of Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr., and other similarly situated drivers within the meaning of the FLSA, Article X, Section 24 of the Florida Constitution, and the KWPA.

23.  Defendant Olathe Noble Equipment Leasing, Inc. is a Kansas corporation, formed in 2004, that changed its name from TransAm Leasing, Inc. in 2016.  On information and belief, Olathe Noble Equipment Leasing, Inc. is an integrated enterprise with Defendant TransAm Trucking, Inc. and acts directly or indirectly in the interest of TransAm in relation to TransAm's lease purchase drivers at all times. Defendant Olathe Noble Equipment Leasing, Inc. is a joint employer of Plaintiffs Kirk

Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. for purposes of the FLSA and the KWPA.

## III.   JURISDICTION AND VENUE

24.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this case arises under the laws of the United States.  Specifically, this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

25.     The Court also has jurisdiction over the claims brought under the laws of Kansas and Florida pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some of the named plaintiffs are citizens of States different from the Defendant.

26.     Alternatively, Plaintiffs request that this Court exercise supplemental jurisdiction over their claims under the laws of Kansas and Florida pursuant to 28 U.S.C. § 1367.

27.     Venue is proper pursuant to 28 U.S.C. § 1391(b): the Defendants reside in the State of Kansas for venue purposes and/or are subject to the Court's personal jurisdiction in that they have substantial contacts with and conduct business in the State of Kansas.

## IV.   FACTS

### A.   Facts relating to TransAm's corporate structure

28.     TransAm Trucking, Inc. operates as a trucking company.

29.     The nature of TransAm Trucking, Inc.'s business is "Transportation-Common Carrier."

30.     TransAm Trucking, Inc. maintains a principal office, corporate headquarters, and driver terminal in Olathe, Kansas at 15910 South 169 Highway.

31.     Policies concerning driver recruiting, training, classification, and compensation are set by TransAm executives and managers in the Olathe, Kansas headquarters.

32.     On information and belief, TransAm's recruitment department is located in Olathe, Kansas.

33.     On information and belief, TransAm's payroll department, which is responsible for issuing paychecks and W-2 forms to its company drivers, is located in Olathe, Kansas.

34.     On information and belief, TransAm's settlement department, which is responsible for calculating earnings and taking deductions from the pay of TransAm's lease purchase drivers, is located in Olathe, Kansas.

35.     On information and belief, TransAm's primary fleet management department, which dispatches and supervises drivers, is located in Olathe, Kansas.

36.     TransAm executives and and managers based in Olathe, Kansas oversee all TransAm departments.

**B.     Facts relating to unpaid orientation**

37.     TransAm recruits individuals to work as truck drivers.

38.     TransAm requires individuals to attend orientation for several days prior to beginning truck driving for TransAm.

39.     The orientation sessions occur in various facilities owned and/or operated by TransAm, including facilities in Olathe, Kansas, Rockwall, Texas, and Tampa, Florida.

40.     The orientation program typically lasts approximately three to four days and consists of classroom training and some training on the trucks.

41.     For some individuals, orientation is then followed by several days or weeks of over-the-road training with a trainer truck driver.

42.     TransAm has not paid Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr., and other similarly situated individuals all minimum wages owed to them for attending orientation and subsequent training.

43.     The initial orientation sessions are either unpaid or paid at a rate that is so low that it does not compensate individuals at the federal minimum wage for all hours worked.

44.     To the extent that TransAm has paid some compensation for orientation, that compensation was not paid as wages free and clear because TransAm deducts that compensation from future payments to those individuals.

45.     Plaintiff Kirk Roberts attended orientation in Rockwall, Texas and was not compensated at full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

46.     Plaintiff John Curtis attended orientation in Olathe, Kansas and again in Rockwall, Texas, and he was not compensated at full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

47.     Plaintiff Terrence Colvin-Williams attended orientation in Tampa, Florida, and he was not compensated at full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

48.     Plaintiff Reginald Bradley attended orientation in Olathe, Kansas, and he was not compensated at full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

49.     Plaintiff David Coleman attended orientation in Tampa, Florida, and he was not compensated for time spent at orientation and any compensation was not paid as wages free and clear.

50.     Plaintiff Carl McRoberts Jr. attended orientation in Rockwall, Texas and was not compensated at full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

51.     The individuals attending orientation are employees of TransAm during orientation.

52.     Drivers often sign contracts to drive trucks for Defendants during orientation.

53.     The orientation program is conducted by TransAm employees and agents and uses materials developed by TransAm.

54.     The substance of the orientation program includes learning about and being trained on TransAm policies, procedures, and systems.

55.     TransAm policies and procedures are distributed to drivers at orientation.

56.     Drivers complete new hire paperwork for TransAm at orientation.

57.     Orientation also includes a skills assessment and a pre-employment drug screen.

58.     At the end of orientation, drivers get their driver IDs, meet with their managers and/or trainers, and typically receive their initial driving assignments.

59.     The drivers are expected to continue working for TransAm as a truck driver after completion of orientation.

60.     Some drivers are also required to go through over-the-road training, driving in a truck with a trainer driver for several days or weeks after orientation.

61.     Plaintiff John Curtis did over-the-road training with a trainer driver for several days after orientation, for which he was not compensated at the full federal minimum wage for all compensable hours.

62.     The orientation and training primarily benefit TransAm, because, *inter alia*, it prepares drivers to begin driving for TransAm, trains them in TransAm-specific policies and procedures, introduces them to important TransAm managerial employees, and assigns them their initial driving jobs, etc.

63.     Under the FLSA, TransAm is required to pay Plaintiffs and other truck drivers minimum wages for all work they perform.

64.     TransAm has failed to compensate Plaintiffs and other truck drivers for all hours worked during orientation at the federal minimum wage.

65.     TransAm has failed to pay Plaintiffs and other truck drivers their wages free and clear for all hours worked during orientation at the federal minimum wage because Defendant deducts from subsequent amounts owed the compensation paid to individuals for orientation.

66.     TransAm's violations of the FLSA, as described herein, are willful and in reckless disregard for its employees' rights under the FLSA.

**C.    Facts relating to consumer fraud under the KCPA.**

67.     TransAm has induced individuals to attend orientation to become truck drivers for TransAm through the false promise that the individuals will be able to work as "company drivers" (meaning that they will be W2 employees of TransAm), when in fact TransAm pressures the individuals into working as "lease purchase drivers" (classified as independent contractors and required to pay for their trucks and other expenses through wage deductions, *inter alia*) instead and/or only offers drivers lease purchase driver jobs and refuses to provide them with the promised company driver jobs.

68.     For example, named plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr. were all told by TransAm recruiters that company driver jobs were available and went to orientation with and/or because of that representation.

69.     During orientation, Plaintiff Kirk Roberts and the other drivers with whom he attended orientation were pressured multiple times into switching from company driver to lease purchase driver positions.

70.     At the end of orientation, TransAm agents informed Roberts that there were no trucks available for company driver positions, and he and others in his orientation group would have to wait around indefinitely for a truck for a company driver job or would have to sign on as lease purchase drivers to start driving right away.

71.     On information and belief, the representation that there were no company trucks available was not accurate and/or was misleading.

72.     Plaintiff John Curtis was told by a recruiter that company driver jobs were available, but when he got to orientation in Olathe, Kansas in 2019, the instructor told him that there are no company driver jobs, only lease purchase driver jobs, and the instructor stated that he did not know why TransAm kept telling people that company driver positions were available.

73.     Curtis ended up leaving orientation without taking a position because TransAm did not provide him with a company driver position.

74.     Curtis attended orientation again in 2020 in Rockwall, Texas, after a recruiter told him that TransAm had company driver positions available.

75.     However, at the end of that orientation, Curtis was again told that there were no company driver positions available and was pressured into becoming a lease purchase driver.

76.     Curtis did not take a position with TransAm after orientation.

77.     Plaintiff Terrence Colvin-Williams was contacted by a TransAm recruiter about a company driver position was sent to orientation in Tampa, Florida for a company driver position.

78.     Colvin-Williams was pressured into being a lease purchase driver once he got to orientation.

79.     Plaintiff Reginald Bradley was also told by a TransAm recruiter that TransAm had company driver positions available.

80.     However, when he got to orientation, he was told there were only lease purchase driver positions, and he had no choice but to accept a lease purchase driver position.

81.     Plaintiff Carl McRoberts Jr. was initially contacted by a TransAm recruiter about a company driver job.

82.     At orientation, however, McRoberts' instructor informed him and the others in his orientation group that there were actually no company driver jobs available and they would have to become lease purchase drivers if they wanted to start working right away.

83.     On information and belief, many individuals recruited by TransAm with the promise of company driver positions have little choice but to sign on as lease purchase drivers, because they are stranded at the orientation site with no way to get home and often without the financial means to do so.

84.     TransAm is a supplier under the KCPA because it solicits, engages in or enforces consumer transactions in the ordinary course of business, including recruiting individuals to work as truck drivers for it.

85.     TransAm does this recruitment in Kansas, including advertising, soliciting, and recruiting for drivers from Kansas, making calls and sending emails and text messages to potential drivers from Kansas, and developing and implementing its plans for advertising, solicitation, and recruitment of drivers in Kansas.

86.     During recruitment, TransAm represents to drivers that they can attend orientation to become company drivers.

87.     Drivers go to orientation—often traveling hundreds or thousands of miles from their homes—with the understanding that they can get jobs with TransAm as company drivers.

88.     During and after orientation, TransAm attempts to induce drivers into becoming lease purchase drivers instead of company drivers.

89.     TransAm does this in several ways, including but not limited to:  (a) inaccurately and/or misleadingly representing to drivers that there are no company trucks available; (b) telling drivers that they can start driving right away if they become lease purchase drivers but will have to wait an unspecified and indefinite amount of time to become company drivers; and/or (c) eventually sending drivers home without jobs if they continue to insist that they want to be company drivers.

90.     TransAm's statements/representations during and after recruitment and during and after orientation about whether or not there are company driver jobs available constitute deceptive acts and practices under the KCPA.

91.     *Inter alia*, TransAm makes representations during recruitment that company driver jobs are available even knowing or with reason to know that company driver jobs are not available and/or will not be offered to the drivers when they attend orientation.

92.     TransAm also makes representations during and after orientation that company trucks are not available even if they are available, with the intention of inducing individuals to become lease purchase drivers instead.

93.     TransAm's statements/representations during and after recruitment and during and after orientation about whether or not there are company driver jobs available also constitute unconscionable acts and practices under the KCPA.

94.     *Inter alia*, TransAm's statements/representations have been made with TransAm's knowledge or reason to know that:  (a) the individuals would not receive a material benefit from the transaction (because TransAm in fact would not provide the individuals with company driver jobs); (b) there was no reasonable probability that the individuals would receive the company driver jobs promised to them; and (c) the transaction was excessively one-sided in favor of TransAm, etc.

95.     TransAm's deceptive acts and practices and unconscionable acts and practices have been in connection with a consumer transaction, namely the recruitment of individuals to attend orientation and provide services as truck drivers for Defendant.

96.     TransAm's actions have caused substantial harm to drivers and have adversely affected their legal rights, including but not limited to:  (a) causing individuals to attend and complete orientation and then failing to provide them with the promised job; (b) causing individuals to incur debts, expenses, and deductions from pay as independent contractor drivers that they would not have incurred as company drivers; (c) depriving individuals of wages and minimum wages that they would have received as company drivers; and/or (d) causing individuals to incur the expense of their travel home if they are not given company driver jobs.

97.     For example, Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. incurred extensive expenses as lease purchase drivers that they would not have incurred as company drivers, including but not limited to deductions from earnings that they would not have have paid as company drivers, expenses for maintenance and repairs to the trucks they drove, forfeiture of their last paychecks, and thousands of dollars of debt obligations imposed on them by TransAm after their employment.

98.     As lease purchase drivers, Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. and other similarly situated individuals often earned less in net income than they would have earned as company drivers, including some pay periods in which they received no income or were paid less than the federal minimum wage per compensable hour worked.

99.     Plaintiff John Curtis ultimately did not take a position with TransAm because they did not provide him with the promised company driver position, causing

17

him to suffer harm and damages including lost time that he spent in orientation and

subsequent training and waiting, and the expenses he incurred to travel home from the

orientation facilities.

100.    Defendant's actions are in violation of the KCPA.

**D.    Facts relating to miclassification of lease purchase drivers as independent contractors instead of as employees.**

101.    TransAm prefers to employ lease purchase drivers over company drivers

because it can pass along its costs of doing business to its allegedly "independent

contractor" drivers, while retaining complete control over revenue, thereby minimizing

(if not eliminating) its own risk of losses.

102.    Lease purchase drivers, however, are not independent of TransAm and

are – in everything but name – employees of TransAm.

103.    In order to be hired as lease purchase drivers by TransAm, drivers need to

lease a truck from Olathe Noble Equipment Leasing, Inc. (ONE Leasing), a Kansas

corporation with a principal office at 15910 South 169 Highway (the same address as

TransAm).

104.    On information and belief, ONE Leasing acts directly or indirectly in the

interest of TransAm in relation to TransAm's drivers at all times.

105.    In order to lease trucks from ONE Leasing, drivers must sign a standard-

form contract with ONE Leasing titled "Equipment Lease Agreement."

106.    Drivers must also sign a standard-form contract with TransAm titled

"Independent Contractor Owner-Operator Agreement."

107.    TransAm's Independent Contractor Owner-Operator Agreement (IC Agreement) states that drivers are to be compensated at a fixed rate per dispatched mile.

108.    All terms of the contracts with TransAm and ONE Leasing are presented to drivers on a take-it-or-leave-it basis with no opportunity for negotiation.

109.    On information and belief, Defendants require all members of the putative class to enter into these same or similar agreements under the same or similar circumstances.

110.    The IC Agreement makes numerous conclusory statements to further the fiction that Defendants' lease purchase drivers are not employees, but the governing terms of the Agreement clearly retain for Defendants total operational and financial control:

a.    TransAm acknowledges that it has exclusive control and use of the leased truck and assumes complete responsibility for the operation of the leased truck;

b.    Lease purchase drivers may only drive their leased trucks for TransAm; in order to drive their leased trucks for a different trucking company, lease purchase drivers must obtain prior written approval from TransAm;

c.    Lease purchase drivers must obtain prior written approval from TransAm to have passengers in their trucks;

d.    Lease purchase drivers are expressly prohibited from carrying a firearm in their leased trucks, even when not under dispatch by TransAm;

e.  Lease purchase drivers must allow TransAm to deduct $500 from their compensation within the first 90 days of the contract for use as a "Performance Escrow," from which TransAm may pay itself for what it considers to be drivers' obligations under the contract, as determined by TransAm unilaterally; and

f.  Lease purchase drivers must agree to immediately return damaged trailers to TransAm's home terminal in Olathe, Kansas, or "to such other location as authorized and directed" by TransAm.

111.   In fact, as well as under the contract, Defendants control and direct the performance of lease purchase drivers' work:

a.  Defendants' driver managers assign loads to drivers, effectively controlling drivers' schedules;

b.  Defendants do not allow drivers to book their own loads;

c.  If a driver manager does not assign a load to a driver, the driver is forced to wait without compensation for the next load;

d.  Although Defendants claim that they do not use a "forced dispatch" system, they effectively force dispatch by punishing drivers if they reject loads by withholding additional loads and/or by only assigning low-paying loads that do not cover costs; and

e.  Because of the structure of lease payments, Defendants' drivers have no choice but to take shipments as directed by Defendants or they will quickly fall into default.

112.    Under the KWPA test to determine whether an employer/employee relationship exists, lease purchase drivers are the employees of Defendants.

113.    Under the FLSA test to determine whether an employer/employee relationship exists, lease purchase drivers are the employees of Defendants.

**E.    Facts relating to deductions from wages made unlawful by the KWPA.**

114.    Under the KWPA, an employer may only take deductions from wages if an employer has signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee.

115.    Even if otherwise allowed by the KWPA, the KWPA explicitly prohibits employers from making deductions from wages that bring wages below the applicable minimum wage, regardless of whether the applicable minimum wage is established by Kansas law or by the FLSA.

116.    Pursuant to their IC Agreements with TransAm, lease purchase drivers are responsible for paying for expenses including but not limited to:  fuel, fuel taxes, highway use taxes, maintenance, and repairs.

117.    The IC Agreement allegedly authorizes TransAm to deduct the lease payments owed to ONE Leasing from driver compensation, along with deductions for bobtail and deadhead insurance premiums, occupational accident insurance premiums, a weekly fee for use of TransAm's Pass Plus - Scale bypass transponder services, and a weekly fee for fuel optimization services.

118.    The IC Agreement acknowledges that these deductions may result in "Negative Settlement Balances," i.e. settlements in which the deductions from pay

exceed the mileage rate earned by the driver, such that instead of receiving compensation for work performed, the driver accrues a debt to TransAm; in such circumstances the driver must pay TransAm interest – to be deducted from future settlements.

119.    Upon termination, Defendants make deductions from drivers' final paychecks that zero out their earnings.  Kirk Roberts and Carl McRoberts Jr. received letters from TransAm documenting this practice.

120.    The deductions that Defendants take from lease purchase drivers' wages are not for a lawful purpose accruing to the employee.

121.    The deductions for insurance, maintenance, and repairs do not accrue to the benefit of the employee because they are made so that Defendants will not bear the cost of breakage or bear any loss resulting from burglaries, robberies, or alleged negligent acts.

122.    The deductions for various items described in the IC agreement as voluntary are  not for a lawful purposes accruing to the employee because they are not necessary to the performance of the assigned duties and are customarily supplied by the employer.

123.    As a result of the numerous deductions taken from drivers' compensation, there are weeks in which lease purchase drivers receive wages that are less than the federal minimum, or in which they receive no wages at all, in violation of the KWPA.

**E.    Facts relating to lease purchase drivers' unpaid minimum wages in violation of the FLSA.**

124.    Defendants' lease purchase drivers frequently spend long periods of time on the road, away from their homes and families.

125.    Defendants' lease purchase drivers frequently perform continuous tours of duty in excess of 48 hours.

126.    Under the FLSA, drivers are entitled to be paid at least the federal minimum wage for all time spent on continuous tours of duty, with the exception of 8 hours per 24-hour period for sleeping and bona fide meal breaks.

127.    Defendants' method of paying lease purchase drivers a fixed rate per mile (net deductions) far too often results in lease purchase drivers receiving less than the federal minimum wage for all compensable working time.

128.    Moreover, Defendants violate the FLSA by failing to pay lease purchase drivers their wages free and clear, because Defendant engages in a practice of withholding compensation in order to pay itself for prior weeks in which drivers had a negative settlement balance.

**E.    Facts relating to company drivers' unpaid minimum wages in violation of the FLSA.**

129.    TransAm pays its company drivers mileage-based pay.

130.    On information and belief, this pay is intended to compensate company drivers at a rate no less than the federal minimum wage for on-duty driving time and on-duty non-driving time.

131.     Under the FLSA, however, truck drivers are entitled to receive at least the federal minimum wage for hours that TransAm does not intend its mileage-based pay to cover, including but not limited to (a) time spent in the sleeper berth and/or passenger seat of the truck when driving as a team, (b) time when the truck is stopped, but drivers remain responsible for responding to communications from dispatch, monitoring the safety and security of their trucks and loads, and otherwise complying with TransAm policies, and (c) on-call time while waiting for dispatch to assign the driver(s) another load.

132.     TransAm compensates drivers for this time at $0 per hour, which violates the FLSA.

133.     Additionally/alternatively, the weekly wages drivers receive do not always adequately compensate them for all compensable hours at the federal minimum wage.

## V.    FLSA COLLECTIVE ACTION ALLEGATIONS (ORIENTATION WAGES)

134.     Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr. assert their claims against Defendant TransAm under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated employees currently and formerly employed by TransAm.

135.     Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the collective for which they seek certification under section 216(b) as follows:

ALL INDIVIDUALS WHO HAVE ATTENDED ORIENTATION
AND/OR TRAINING FOR TRANSAM DURING THE APPLICABLE
STATUTORY PERIOD AND HAVE NOT RECEIVED WAGES FOR ALL
HOURS WORKED AT THE FEDERAL MINIMUM WAGE.

136.    These claims meet the requirements for collective action certification

under the FLSA.

137.    All potential opt-in plaintiffs are similarly situated with respect to the

FLSA claims because they all attended orientation to become truck drivers for TransAm

and all suffered from the same unlawful policies, specifically that they were not paid at

least minimum wage for all orientation time.

## VI.    FLORIDA CONSTITUTION RULE 23 CLASS ACTION ALLEGATIONS (ORIENTATION WAGES)

138.    Plaintiffs Terrence Colvin-Williams and David Coleman assert their claims

against Defendant TransAm under the Florida Constitution on behalf of a class pursuant

to Fed. R. Civ. P. 23.

139.    Plaintiffs sent notice of this claim to TransAm more than fifteen days prior

to the filing of this First Amended Complaint; in its response, TransAm failed to pay the

total amount of unpaid wages or otherwise resolve the claim to the satisfaction of

Plaintiffs, as required by Fla. Stat. § 448.110.

140.    Pending any modifications necessitated by discovery, the named Plaintiffs

preliminarily define the following class:

ALL INDIVIDUALS WHO HAVE ATTENDED ORIENTATION
AND/OR TRAINING FOR TRANSAM IN FLORIDA DURING THE
APPLICABLE STATUTORY PERIOD AND HAVE NOT RECEIVED
WAGES FOR ALL HOURS WORKED AT THE FLORIDA MINIMUM
WAGE.

141.    All potential Rule 23 plaintiffs are similarly situated with respect to the Florida orientation claims because they all attended orientation to become truck drivers for TransAm in Florida and all suffered from the same unlawful policies, specifically that they were not paid at least minimum wage for all orientation time.

142.    The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members is in the thousands.

143.    There are issues of law and fact common to all class members, because TransAm's orientation practices apply to all class members.  The common questions of law and fact predominate over any questions affecting individual class members.

144.    The claims of the named Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

145.    The named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

146.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiffs as well as every absent member of the proposed class.

147.    A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges uniform deceptive practices; many class members

may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claim.

## VII.   KANSAS CONSUMER PROTECTION ACT RULE 23 CLASS ACTION ALLEGATIONS

148.     Plaintiffs Kirk Roberts, John Curtis, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. assert their claims against Defendant TransAm under the KCPA on behalf of a class pursuant to Fed. R. Civ. P. 23.

149.     Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the following class:

> ALL INDIVIDUALS WHO WERE TOLD DURING RECRUITMENT THAT COMPANY DRIVER JOBS WERE AVAILABLE BUT WHO DID NOT RECEIVE COMPANY DRIVER JOBS DURING OR AFTER ORIENTATION.

150.     All potential Rule 23 plaintiffs are similarly situated with respect to the KCPA claims because they all suffered from the same unlawful policies, including:

a.  Policies that TransAm recruiters make or are allowed to make representations during recruitment that company driver jobs are available;

b.  Policies that TransAm employees make or are allowed to make representations during and after orientation that company driver jobs are not available and/or statements pressuring individuals to take lease purchase driver positions instead; and

      c.   Harm to individuals because of these representations.

151.    The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members is in the thousands.

152.    There are issues of law and fact common to all class members, because TransAm's recruitment, orientation, and job placement practices apply to all class members.  The common questions of law and fact predominate over any questions affecting individual class members.

153.    The claims of the named Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

154.    The named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

155.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiffs as well as every absent member of the proposed class.

156.    A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges uniform deceptive practices; many class members may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it

would be an inefficient use of scarce judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claim.

157.     Plaintiffs have given notice of this action to the Kansas Attorney General, pursuant to K.S. § 50-634(g).

## VII.   KANSAS WAGE PAYMENT ACT RULE 23 CLASS ACTION ALLEGATIONS (LEASE PURCHASE DRIVER WAGES)

158.     Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. assert their claim against Defendants TransAm and ONE Leasing under the KWPA on behalf of a class pursuant to Fed. R. Civ. P. 23.

159.     Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the following class:

> ALL INDIVIDUALS WHO WORKED FOR DEFENDANTS AS DRIVERS PURSUANT TO AN INDEPENDENT CONTRACTOR AGREEMENT THAT THEY THEMSELVES SIGNED WHILE LEASING THEIR TRUCK FROM DEFENDANTS.

160.     All potential Rule 23 plaintiffs are similarly situated with respect to the KWPA claims because they all suffered from the same unlawful policies, including policies that they must pay for expenses through wage deductions including, *inter alia*, lease payments, insurance, maintenance, repairs, fuel, taxes, insurance, maintenance, and repairs, which are unlawful under the KWPA.

161.     The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members is in the thousands.

162.     There are issues of law and fact common to all class members, because Defendants' lease purchase driver compensation practices apply to all class members. The common questions of law and fact predominate over any questions affecting individual class members.

163.     The claims of the named Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

164.     The named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

165.     The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiffs as well as every absent member of the proposed class.

166.     A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges uniform compensation practices; many class members may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claim.

## VII.     FLSA COLLECTIVE ACTION ALLEGATIONS (LEASE PURCHASE DRIVER WAGES)

167.    Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. asserts their lease purchase driver minimum wages claim under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated employees currently and formerly employed by Defendant.

168.    Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the collective for which they seek certification under section 216(b) as follows:

> ALL INDIVIDUALS WHO WORKED FOR DEFENDANTS AS DRIVERS PURSUANT TO AN INDEPENDENT CONTRACTOR AGREEMENT THAT THEY THEMSELVES SIGNED WHILE LEASING THEIR TRUCK FROM DEFENDANTS.

169.    These claims meet the requirements for collective action certification under the FLSA.

170.    All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they all worked as lease purchase drivers for Defendants and all suffered from the same unlawful policies, specifically that Defendants took deductions from their wages that brought their pay below the federal minimum.

## VII.    FLSA COLLECTIVE ACTION ALLEGATIONS (COMPANY DRIVER WAGES)

171.    Plaintiff David Coleman asserts his company driver minimum wages claim against Defendant TransAm under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all other similarly situated employees currently and formerly employed by Defendant.

172.    Pending any modifications necessitated by discovery, the named Plaintiff preliminarily defines the collective for which he seeks certification under section 216(b) as follows:

> ALL INDIVIDUALS WHO HAVE WORKED AS COMPANY DRIVERS FOR TRANSAM DURING THE APPLICABLE STATUTORY PERIOD AND HAVE NOT RECEIVED WAGES FOR ALL HOURS WORKED AT THE FEDERAL MINIMUM WAGE.

173.    These claims meet the requirements for collective action certification under the FLSA.

174.    All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they all worked as company drivers for TransAm and all suffered from the same unlawful policies, specifically that they were not paid at least the minimum wage for compensable working time.

## COUNT I – FAIR LABOR STANDARDS ACT (FLSA)
### (Orientation Minimum Wage Claim)

Defendant TransAm's conduct, in failing to pay its drivers at least minimum wage for all hours worked during orientation violates the FLSA, 29 U.S.C. § 201, et seq. This claim is brought against Defendant TransAm on behalf of the named Plaintiffs and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

## COUNT II – VIOLATION OF ARTICLE X, SECTION 24
### OF THE FLORIDA CONSTITUTION
### (Florida Orientation Minimum Wage Claim)

Defendant TransAm's conduct, as set forth above, constitutes a willful violation of Article X, Section 24 of the Florida Constitution.  Through the actions described above, TransAm has violated the Florida Constitution by failing to pay wages,

including minimum wages, to individuals for attending TransAm's unpaid orientation in Florida to work as drivers for TransAm.  This claim is brought against Defendant TransAm on behalf of the name Plaintiffs and all similarly situated individuals.

## COUNT III – KANSAS CONSUMER PROTECTION ACT
### (Unfair and Deceptive Practices Claim)

Defendant TransAm's conduct, as set forth above, violates the KCPA.  Through the actions described above, TransAm has violated the provisions of KCPA, including K.S. §§ 50-626 and 50-627.  This claim is brought against Defendant TransAm on behalf of the named Plaintiffs and all other similarly situated individuals pursuant to K.S. § 50-634.

## COUNT IV – KANSAS WAGE PAYMENT ACT
### (Lease Purchase Driver Unlawful Deductions Claim)

Defendants TransAm and ONE Leasing have engaged in conduct, as set forth above, that violates the KWPA.  Through the actions described above, Defendants have violated the provisions of KWPA, including K.S. §§ 44-314-315, 319.  This claim is brought against Defendants TransAm and ONE Leasing on behalf of the named Plaintiffs and all other similarly situated individuals pursuant to K.S. § 44-324.

## COUNT V – FAIR LABOR STANDARDS ACT
### (Lease Purchase Driver Minimum Wage Claim)

Defendants TransAm and ONE Leasing have engaged in conduct, by taking deductions from lease purchase driver wages that result in drivers being compensated at less than the minimum wage for all hours worked, that violates the FLSA, 29 U.S.C. § 201, *et seq*.  This claim is brought against TransAm and ONE Leasing on behalf of the

named Plaintiffs and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

**COUNT VI – FAIR LABOR STANDARDS ACT**
**(Company Driver Minimum Wage Claim)**

Defendant TransAm's conduct, in failing to pay its company drivers at least minimum wage for all hours worked violates the FLSA, 29 U.S.C. § 201, et seq. This claim is brought against Defendant TransAm on behalf of the named Plaintiffs and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

**DEMAND FOR JURY TRIAL**

The Plaintiffs demand a jury for all issues so triable.

**LOCATION OF JURY TRIAL**

The location of this trial should be Kansas City, Kansas.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter the following relief:

a.   Certification of the proposed opt-in classes pursuant to the FLSA, 29 U.S.C. § 201, *et seq*.;

b.   Permission for Plaintiffs to notify similarly situated individuals of their right to opt in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

c.   An award of damages for all minimum wages that are due to the named Plaintiffs and all similarly situated individuals under the FLSA;

d.      Statutory liquidated damages under the FLSA;

e.      A finding that Defendant's violation of the FLSA was willful and that, therefore, the statute of limitations for the FLSA claim is three years;

f.      Certification of the Florida orientation wages claim as a class action under Fed. R. Civ. P. 23;

g.      A finding that Defendant TransAm has violated Article X, Section 24 of the Florida Constitution by failing to pay wages to individuals for attending orientation in Florida to work as drivers for TransAm;

h.      Statutory liquidated damages under Article X, Section 24 of the Florida Constitution;

i.      A finding that TransAm has acted willfully in violating Article X, Section 24 of the Florida Constitution;

j.      A finding that the statute of limitations under Article X, Section 24 of the Florida Constitution is five years because of TransAm's willful violation of Article X, Section 24 of the Florida Constitution;

k.      An award to the Plaintiffs of the full Florida minimum wage for all hours of orientation attended in Florida since March 1, 2016;

l.      Certification of the KCPA claim as a class action under Fed. R. Civ. P. 23;

m.      An award of damages under the KCPA relating to aggrievement or legal harm caused by Defendant TransAm's deceptive and/or unconscionable acts and practices;

n.      A declaratory judgment that Defendant TransAm's actions, as set forth herein, are unlawful under the KCPA;

o.      Appropriate ancillary relief under the KCPA;

p.      A finding that Defendant TransAm's violation of the KCPA was willful;

q.      Civil penalties pursuant to K.S. § 50-636, as appropriate;

r.      Certification of the KWPA claim as a class action under Fed. R. Civ. P. 23;

s.      An award of damages for all wages due under the KWPA;

t.      A finding that Defendant TransAm's violation of the KWPA was willful and that, therefore, Plaintiffs are entitled to penalties in an amount equal to 100% of unpaid wages;

u.      An injunction preventing Defendants from continuing the legal violations described herein, including but not limited to non-payment of minimum wages for orientation and training; deceptive and/or unconscionable acts and practices relating to recruitment of drivers and availability of company driver positions; unlawful deductions from lease purchase drivers' wages; and failure to pay drivers for all hours worked;

v.      An award of attorneys' fees and costs;

w.      Pre- and post-judgment interest; and

x.      Any other relief to which the named Plaintiffs and similarly situated individuals may be entitled.

Respectfully submitted,

KIRK ROBERTS, JOHN CURTIS, TERRENCE COLVIN-WILLIAMS, REGINALD BRADLEY, DAVID COLEMAN, and CARL McROBERTS JR., on behalf of themselves and all others similarly situated,

By their attorneys,

*/s/ Brendan J. Donelon*
Brendan J. Donelon, KS #17420
DONELON, P.C.
4600 Madison, Ste. 810
Kansas City, Missouri 64112
816-221-7100
Fax: 816-709-1044
brendan@donelonpc.con

Hillary Schwab, BBO #666029*
Brant Casavant, BBO #672614*
Rachel Smit, BBO #688294*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
www.fairworklaw.com
Email: hillary@fairworklaw.com,
brant@fairworklaw.com,
rachel@fairworklaw.com

*Admitted pro hac vice*

## Certificate of Service

I hereby certify that on March 24, 2021, a true and correct copy of this pleading was served upon all parties of record as recorded on this Court's CM/ECF management system.

*Brendan J. Donelon*