## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

_____

|  |  |  |
|---|---|---|
| KIRK ROBERTS, | ) | |
| FARAJI ARTURO COUNCIL,[1] | ) | |
| TERRENCE COLVIN-WILLIAMS, | ) | |
| REGINALD BRADLEY, DAVID COLEMAN, | ) | |
| and CARL McROBERTS JR., on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
|  | ) | |
| Plaintiffs, | ) | Civil Action No. |
|  | ) | 2:21-cv-02073-JWB-GEB |
| v. | ) | |
|  | ) | |
| TRANSAM TRUCKING, INC., | ) | **JURY DEMANDED** |
| OLATHE NOBLE EQUIPMENT | ) | |
| LEASING, INC., and | ) | |
| JACOBSON HOLDINGS, INC., | ) | |
|  | ) | |
| Defendants. | ) | |

_____ )

### SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

## I.    INTRODUCTION

1.      This is an action brought on behalf of individuals who have worked for

Defendant Jacobson Holdings, Inc. ("Jacobson"), through its wholly owned subsidiary

TransAm Trucking, Inc. ("TransAm"), as truck drivers and who have been subject to

the unlawful practices described herein, including nonpayment of wages and minimum

wages and unfair and deceptive business practices, in violation of state and federal law.

As set forth in more detail below, the named plaintiffs bring this action on behalf of

themselves and all other similarly situated individuals and seek recovery of all unpaid

_____

[1]      The plaintiff formerly known as John Curtis has legally changed his name to Faraji Arturo Council.

1

wages and minimum wages and damages for Defendants' unfair and deceptive business practices. Plaintiffs also seek liquidated damages, civil penalties as appropriate, appropriate ancillary relief, interest, costs and attorneys' fees, and all other relief to which they are entitled.

2. First, Jacobson and TransAm have, together and separately, failed to pay truck drivers all minimum wages to which they are entitled for orientation and training time, in violation of the federal Fair Labor Standards Act (FLSA) and, for individuals who have attended orientation in Florida, in violation of the Florida Constitution, Article X, Section 24.

3. Second, Jacobson and TransAm have, together and separately, engaged in unfair and/or deceptive business practices under the Kansas Consumer Protection Act (KCPA) to induce individuals to become lease drivers, including, *inter alia*, taking advantage of consumers who have attended multi-day driver orientation programs far from their homes based on representations that they can become "company drivers" for TransAm, where they are then pressured by Jacobson and TransAm employees into signing up as "lease drivers"[2] and told that there are no company driver jobs available; omitting, misrepresenting, and/or concealing material facts about the risk and costs associated with being a lease driver and the amounts of money that lease drivers are likely to make working for TransAm; omitting, misrepresenting and/or concealing material facts about the financial and economic benefits to Defendants from drivers

---

[2]     "Lease drivers" refers to individuals who signed independent contractor agreements with one ore more of the Defendants and leased their truck through one or more of the Defendants.

signing on as lease drivers instead of as company drivers; and otherwise omitting, misrepresenting and/or concealing material facts concerning that individuals should know in order to make the decision whether or not to become lease drivers.

4.    Third, Jacobson and TransAm have, together and separately, engaged in unconscionable business practices under the Kansas Consumer Protection Act (KCPA), including, *inter alia*, presenting contracts and obtaining signatures on those contracts under unconscionable circumstances and taking advantage of the imbalance in bargaining power between Defendants and the individuals attending orientation by presenting one-sided, excessively priced options for becoming lease drivers.

5.    Fourth, Jacobson, TransAm, and Defendant Olathe Noble Equipment Leasing, Inc. ("ONE Leasing") (together, "Defendants") have misclassified lease drivers as independent contractors when they are, in fact, employees and have made unlawful deductions from their wages in violation of the Kansas Wage Payment Act (KWPA).

6.    Fifth, Defendants have miclassified lease drivers as independent contractors when they are, in fact, employees; have made unlawful deductions from lease drivers' wages, bringing their wage rate below the federal minimum; and have failed to pay lease drivers at least the federal minimum wage for all hours worked in violation of the FLSA.

7.    Sixth, Jacobson and TransAm has failed to pay company drivers at least the federal minimum wage for all hours worked, in violation of the FLSA.

**II.    PARTIES**

8.      Plaintiff Kirk Roberts is an adult resident of Nottingham, Maryland.  He attended TransAm's truck driver orientation in Rockwall, Texas in approximately March 2020 and worked as a lease driver for TransAm for several months in 2020.  He was an "employee" of Defendants within the meaning of the FLSA.

9.      Plaintiff Faraji Arturo Council is an adult resident of Springfield, Missouri.  He attended TransAm's truck driver orientation in Olathe, Kansas in 2019 and again in Rockwall, Texas in 2020.  He was an "employee" of Defendants within the meaning of the FLSA.

10.     Plaintiff Terrence Colvin-Williams is an adult resident of Stockbridge, Georgia.  He attended TransAm's truck driver orientation in Tampa, Florida in approximately January 2020 and worked as a lease driver for TransAm until approximately April 2020.  He was an "employee" of Defendants within the meaning of the FLSA.

11.     Plaintiff Reginald Bradley is an adult resident of Gainesville, Florida.  He attended TransAm's truck driver orientation in Olathe, Kansas and worked as a lease driver for TransAm until approximately 2019.  He was an "employee" of Defendants within the meaning of the FLSA.

12.     Plaintiff David Coleman is an adult resident of Pocomoke City, Maryland. He attended TransAm's truck driver orientation in Tampa, Florida in approximately September 2019 and worked as a company driver for TransAm until approximately January 2020.  He was an "employee" of Defendants within the meaning of the FLSA.

13.     Plaintiff Carl McRoberts Jr. is an adult resident of Frankfort, Kentucky. He attended TransAm's truck driver orientation in Rockwall, Texas in approximately February 2020 and worked as a lease driver for TransAm until April 2020.  He was an "employee" of Defendants within the meaning of the FLSA.

14.     For the FLSA orientation claim, Plaintiffs bring this action on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

15.     Pursuant to 29 U.S.C. § 216(b), named Plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr. consent to sue as plaintiffs under the Fair Labor Standards Act.  Their consent to sue forms were attached to the original Complaint as Exhibit 1. *See* Docket No. 1-1, filed Feb. 10, 2021.

16.     Plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr., and all others similarly situated are individually covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

17.     For the Florida orientation minimum wage claim, Plaintiff Terrence Colvin-Williams and Plaintiff David Coleman each was an "employee" of Jacobson and TransAm within the meaning of Article X, Section 24 of the Florida Constitution.

18.     For the Florida orientation minimum wage claim, Plaintiffs Terrence Colvin-Williams and David Coleman bring this action on behalf of all similarly situated

individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed

class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure for class

certification.

19.     For the Kansas Consumer Protection Act claim, Plaintiffs Kirk Roberts,

Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts

Jr. bring this action on behalf of all similarly situated individuals pursuant to Rule 23 of

the Federal Rules of Civil Procedure.  The proposed class meets the requirements of

Rule 23 of the Federal Rules of Civil Procedure for class certification.

20.     For the Kansas Wage Payment Act claim, Plaintiffs Kirk Roberts, Faraji

Arturo Council, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr.

bring this action on behalf of all similarly situated individuals pursuant to Rule 23 of

the Federal Rules of Civil Procedure.  The proposed class meetings the requirements of

Rule 23 of the Federal Rules of Civil Procedure for class certification.

21.     For the FLSA lease driver minimum wage claim, Plaintiffs Kirk Roberts,

Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts

Jr. bring this action on behalf of all similarly situated individuals who may choose to

"opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the

FLSA meet the requirements for collective action certification set forth in 29 U.S.C. §

216(b).

22.     For the FLSA company driver minimum wage claim, Plaintiff David

Coleman brings this action on behalf of all similarly situated individuals who may

choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims

under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

23.     Defendant TransAm Trucking, Inc. is a Missouri corporation that employs individuals (including Plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr.) as truck drivers. TransAm Trucking, Inc. is a wholly owned subsidiary of Defendant Jacobson Holdings, Inc. and is an integrated enterprise with Defendants Jacobson Holdings, Inc. and Olathe Noble Equipment Leasing, Inc.  TransAm Trucking has revenues in excess of $500,000 per year and has, at all times relevant to this case, employed two or more persons, including Plaintiffs, who handled and worked on materials which had been moved in interstate commerce.  At all times relevant to this case, TransAm Trucking has acted directly and indirectly in the interests of Jacobson Holdings, Inc. in relation to the lease drivers.

24.     With Defendants Olate Noble Equipment Leasing, Inc. and Jacobson Holdings, Inc., Defendant TransAm Trucking, Inc. jointly employed Plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr., and has jointly employed other similarly situated drivers within the meaning of the FLSA, Article X, Section 24 of the Florida Constitution, and the KWPA.

25.     Defendant Olathe Noble Equipment Leasing, Inc. is a Kansas corporation, formed in November 2004, that changed its name from "TransAm Leasing, Inc." in August 2016.  Olathe Noble Equipment Leasing is a wholly owned subsidiary of

Defendant Jacobson Holdings, Inc. and is also an integrated enterprise with Defendants Jacobson Holdings, Inc., and TransAm Trucking, Inc.  At all times relevant to this case, Olathe Noble Equipment has acted directly and indirectly in the interests of Jacobson Holdings, Inc. and TransAm Trucking, Inc. in relation to the lease drivers.

26.     With Defendants TransAm Trucking, Inc. and Jacobson Holdings, Inc., Defendant Olathe Noble Equipment Leasing, Inc. jointly employed Plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr., and has jointly employed other similarly situated drivers within the meaning of the FLSA and the KWPA.

27.     Defendant Jacobson Holdings, Inc. is a Kansas corporation formed in October 2018.  Jacobson Holdings wholly owns Defendants TransAm Trucking, Inc., and Olathe Noble Equipment Leasing, Inc. as integrated subsidiaries over which it possesses complete and pervasive managerial control and authority.  Since its formation, Jacobson Holdings has caused TransAm Trucking, Inc. and Olathe Noble Equipment Leasing, Inc. to act directly and indirectly in its interests in relation to the lease drivers.

28.     With Defendants TransAm Trucking, Inc. and Olathe Noble Equipment Leasing, Inc., Defendant Jacobson Holdings, Inc. has jointly employed Plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr., and has jointly employed other similarly situated drivers within the meaning of the FLSA and the KWPA.

29.     Within the State of Kansas, and throughout the time period relevant to this case, Defendants TransAm Trucking, Inc., Olathe Noble Equipment Leasing, Inc., and Jacobson Holdings, Inc. have, together and separately, directly and indirectly, solicited and engaged in consumer transactions – that is, the sale, lease, and assignment for value of property or services – as part of their ordinary course of business. Defendants are therefore "suppliers" within the meaning of the Kansas Consumer Protection Act, K.S. §§ 50-617, *et seq.*

## III.   JURISDICTION AND VENUE

30.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this case arises under the laws of the United States.  Specifically, this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

31.     The Court also has jurisdiction over the claims brought under the laws of Kansas and Florida pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some of the named plaintiffs are citizens of States different from the Defendant.

32.     Alternatively, Plaintiffs request that this Court exercise supplemental jurisdiction over their claims under the laws of Kansas and Florida pursuant to 28 U.S.C. § 1367.

33.     Venue is proper pursuant to 28 U.S.C. § 1391(b): the Defendants reside in the State of Kansas for venue purposes and/or are subject to the Court's personal jurisdiction in that they have substantial contacts with and conduct business in the State of Kansas.

IV.     **FACTS**

A.     **Facts relating to Defendants' corporate structure**

34.     TransAm operates as a trucking company.

35.     The nature of TransAm's business is "Transportation-Common Carrier."

36.     TransAm is a wholly owned subsidiary of Jacobson Holdings.

37.     ONE Leasing operates as a tractor and trailer leasing company.

38.     ONE Leasing is a wholly-owned subsidiary of Jacobson Holdings.

39.     TransAm, ONE Leasing, and Jacobson Holdings all maintain their principal offices, corporate headquarters, and driver terminal in Olathe, Kansas, at 15910 South 169 Highway.

40.     TransAm and Jacobson Holdings share a common team of executives and officers, including the same President (Russ McElliott); the same Chief Executive Officer (John Jacobson, Jr.); the same Assistant Secretary (Gregory Gerstner); the same Chief Financial Officer (Murray Droescher); and the same Chairperson (Trudy Jacobson).

41.     ONE Leasing shares a common set of directors with TransAm and Jacobson Holdings, specifically, John Jacobson, Jr., and Trudy Jacobson. One Leasing also shares a common Assistant Secretary with both TransAm and Jacobson Holdings, specifically, Gregory Gerstner. Murray Droescher serves as the Chief Financial officer for Jacobson Holdings, TransAm, and ONE Leasing.

42.     Pursuant to a common "Management and Administrative Services Agreement," Jacobson Holdings directly employs the executives who oversee, direct, and manage TransAm and ONE Leasing.

43.     Defendants' policies concerning driver recruiting, training, classification, compensation, deductions, and vehicle leasing are all formulated and implemented by Jacobson Holdings' executive and management team, who operate out of the companies' shared headquarters in Olathe, Kansas.

44.     TransAm's driver recruitment department is located at Defendants' headquarters in Olathe, Kansas.

45.     Defendants develop advertising, recruitment, training, and orientation materials and draft driver contracts at the headquarters in Olathe, Kansas and communicate with drivers relating to recruitment, training, orientation, driving, compensation, etc. from the headquarters in Olathe, Kansas.

46.     TransAm's payroll department, which is responsible for issuing paychecks and W-2 forms to its company drivers, is located at Defendants' shared headquarters in Olathe, Kansas.

47.     TransAm's settlement department, which is responsible for calculating earnings and taking deductions from the pay of TransAm's lease drivers, is located at Defendants' shared headquarters in Olathe, Kansas.

48.     TransAm's primary fleet management department, which dispatches and supervises drivers, is located at Defendants' shared headquarters in Olathe, Kansas.

49.     All records pertinent to the work performed by the lease drivers are maintained at Defendants' shared headquarters in Olathe, Kansas.

50.     TransAm's and ONE Leasing's  revenues and expenses consolidate up to Jacobson Holdings, i.e. an expense to TransAm that is revenue to ONE Leasing nets out to zero revenue and zero expenses for Jacobson Holdings.

**B.     Facts relating to unpaid orientation**

51.     TransAm recruits individuals to work as truck drivers.

52.     TransAm requires individuals to attend orientation for several days prior to beginning truck driving for TransAm.

53.     The orientation sessions occur in various facilities owned and/or operated by Jacobson Holdings and TransAm, including facilities in Olathe, Kansas, Rockwall, Texas, and Tampa, Florida.

54.     The orientation program typically lasts approximately three to four days and consists of classroom training and some training on the trucks.

55.     For some individuals, orientation is then followed by several days or weeks of over-the-road training with a trainer truck driver.

56.     TransAm has not paid Plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr., and other similarly situated individuals all minimum wages owed to them for attending orientation and subsequent training.

57.     The initial orientation sessions are either unpaid or paid at a rate that is so low that it does not compensate individuals at the federal minimum wage for all hours worked.

58.     To the extent that TransAm has paid some compensation for orientation, that compensation was not paid as wages free and clear because TransAm deducts that compensation from future payments to those individuals.

59.     Plaintiff Kirk Roberts attended orientation in Rockwall, Texas and was not compensated at the full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

60.     Plaintiff Faraji Arturo Council  attended orientation in Olathe, Kansas and again in Rockwall, Texas, and was not compensated at full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

61.     Plaintiff Terrence Colvin-Williams attended orientation in Tampa, Florida, and was not compensated at full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

62.     Plaintiff Reginald Bradley attended orientation in Olathe, Kansas, and was not compensated at full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

63.     Plaintiff David Coleman attended orientation in Tampa, Florida, and was not compensated for time spent at orientation and any compensation was not paid as wages free and clear.

64.     Plaintiff Carl McRoberts Jr. attended orientation in Rockwall, Texas and was not compensated at full minimum wage for all time at orientation and any compensation was not paid as wages free and clear.

65.     The individuals attending orientation are employees of TransAm during orientation.

66.     Drivers often sign contracts to drive trucks for Defendants during orientation.

67.     The orientation program is conducted by TransAm employees and agents and uses materials developed by TransAm and Jacobson Holdings.

68.     The substance of the orientation program includes learning about and being trained on TransAm policies, procedures, and systems.

69.     TransAm policies and procedures are distributed to drivers at orientation.

70.     Drivers complete new hire paperwork for TransAm at orientation.

71.     Orientation also includes a skills assessment and a pre-employment drug screen.

72.     At the end of orientation, drivers get their driver IDs, meet with their managers and/or trainers, and typically receive their initial driving assignments.

73.     The drivers are expected to continue working for TransAm as a truck driver after completion of orientation.

74.     Some drivers are also required to go through over-the-road training, driving in a truck with a trainer driver for several days or weeks after orientation.

75.     Plaintiff Faraji Arturo Council did over-the-road training with a trainer driver for several days after orientation, for which he was not compensated at the full federal minimum wage for all compensable hours.

76. The orientation and training primarily benefit TransAm, because, *inter alia*, it prepares drivers to begin driving for TransAm, trains them in TransAm-specific policies and procedures, introduces them to important TransAm managerial employees, and assigns them their initial driving jobs, etc.

77. Under the FLSA, TransAm is required to pay Plaintiffs and other truck drivers minimum wages for all work they perform.

78. TransAm has failed to compensate Plaintiffs and other truck drivers for all hours worked during orientation at the federal minimum wage.

79. TransAm has failed to pay Plaintiffs and other truck drivers their wages free and clear for all hours worked during orientation at the federal minimum wage because Defendant deducts from subsequent amounts owed the compensation paid to individuals for orientation.

80. TransAm's violations of the FLSA, as described herein, are willful and in reckless disregard for its employees' rights under the FLSA.

**C.    Facts relating to consumer fraud under the KCPA.**

81. TransAm and Jacobson Holdings have together, directly and indirectly, induced individuals to attend orientation to become truck drivers through the false promise that the individuals will be able to work as "company drivers" (meaning that they will be W2 employees of TransAm).

82. In fact, TransAm and Jacobson Holdings have together, directly and indirectly, taken advantage of individuals by pressuring them into working as "lease drivers" (classified as independent contractors and required to pay for their trucks and

other expenses through wage deductions, *inter alia*) instead and/or only offer "lease driver" jobs.

83.     For example, named plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr. were all told by TransAm recruiters that company driver jobs were available and went to orientation with and/or because of that representation.

84.     During orientation, Plaintiff Kirk Roberts and the other drivers with whom he attended orientation were pressured multiple times into switching from company driver to lease driver positions.

85.     At the end of orientation, TransAm agents informed Roberts that there were no trucks presently available for a company driver position, and that he and others in his orientation group could either (a) wait indefinitely for a truck for a company driver job or (b) sign on as lease drivers to start driving right away.

86.     On information and belief, the representation that there were no company trucks available was not accurate and/or was misleading.

87.     Plaintiff Faraji Arturo Council was told by a recruiter that company driver jobs were available, but when he got to orientation in Olathe, Kansas in 2019, the instructor told him that there are no company driver jobs, only lease driver jobs, and the instructor stated that he did not know why TransAm kept telling people that company driver positions were available.

88.     Council left orientation without taking a position because TransAm did not provide him with a company driver position.

89.     Council attended orientation again in 2020 in Rockwall, Texas, after a recruiter told him that TransAm had company driver positions available.

90.     However, at the end of that orientation, Council was again told that there were no company driver positions available and was pressured into becoming a lease driver.

91.     Council did not take a position with TransAm after orientation.

92.     Plaintiff Terrence Colvin-Williams was contacted by a TransAm recruiter about a company driver position was sent to orientation in Tampa, Florida for a company driver position.

93.     Colvin-Williams was pressured into being a lease driver once he got to orientation.

94.     Plaintiff Reginald Bradley was also told by a TransAm recruiter that TransAm had company driver positions available.

95.     However, when he got to orientation, he was told there were only lease driver positions, and he had no choice but to accept a lease driver position.

96.     Plaintiff Carl McRoberts Jr. was initially contacted by a TransAm recruiter about a company driver job.

97.     At orientation, however, McRoberts' instructor informed him and the others in his orientation group that there were actually no company driver jobs available and they would have to become lease drivers if they wanted to start working right away.

98.     On information and belief, many individuals recruited by TransAm and Jacobson Holdings with the promise of company driver positions have little choice but to sign on as lease drivers, because they are stranded at the orientation site with no way to get home and often without the financial means to do so.

99.     TransAm recruits in and from Kansas, including advertising, soliciting, and recruiting for drivers from Kansas, making calls and sending emails and text messages to potential drivers from Kansas, and developing and implementing its plans for advertising, solicitation, and recruitment of drivers in Kansas.

100.    During recruitment, TransAm represents to drivers that they can attend orientation to become company drivers.

101.    Drivers go to orientation – often traveling hundreds or thousands of miles from their homes – with the understanding that they can get jobs with TransAm as company drivers.

102.    During and after orientation, TransAm and Jacobson Holdings together, directly and indirectly, attempt to induce drivers into becoming lease drivers instead of company drivers.

103.    TransAm and Jacobson Holdings do this in several ways, including but not limited to:  (a) inaccurately and/or misleadingly representing to drivers that there are no company trucks available; (b) telling drivers that they can start driving right away if they become lease drivers but will have to wait an unspecified and indefinite amount of time to become company drivers; (c) eventually sending drivers home without jobs if they continue to insist that they want to be company drivers and

requiring that they pay their own way home; and/or (d) omitting or concealing material information about the lease driver role, including the costs and compensation associated with lease driving.

104.    Additionally, TransAm and Jacobson Holdings engage in misrepresentations, omissions, and/or concealments of fact relating to the financial benefits to Defendants from individuals becoming lease drivers, including, *inter alia*:  (a) the fact that Defendants make more money from individuals becoming lease drivers instead of company drivers; (b) there is significant turnover, meaning most individuals do not stay in the lease driver position for very long, and Defendants benefit financially from that turnover; (c) most individuals do not make it through their lease contracts and most do not end up being in a position to purchase their trucks; (d) the costs and compensation associated with lease driving, both on its own and in comparison with being a company driver; and (e) under the lease driver model, Defendants are shifting the costs of doing business onto the drivers and essentially making drivers pay for their jobs.

105.    TransAm and Jacobson Holdings engage in misrepresentations, omissions, and/or concealments of fact relating to the financial benefits/detriments to individuals from becoming lease drivers, including, *inter alia*:  (a) it is difficult for lease drivers to make enough to cover their basic living expenses, and they often make less than they would as a company driver; (b) it is hard to get enough loads/miles (and earn enough money) to be profitable as a lease driver and their opportunity to do so is entirely determined by their driver managers and/or decisions made by Defendants; (c)

there is a high turnover rate; (d) drivers rarely get paid anything for their final two weeks of work and typically do not receive back any funds from their maintenance and tire replacement reserves and their performance escrow accounts, because Defendants almost always find a way to keep all of those funds and all earnings from the last two weeks of work; and (e) failing to provide individuals with complete and accurate information concerning the costs, deductions, and expenses incurred by lease drivers.

106.    TransAm and Jacobson Holdings engage in misrepresentations, omissions, and/or concealments of fact relating to nature of the lease driver relationship, including, *inter alia*, claiming that lease drivers have more freedom than company drivers when, in fact, if lease drivers refuse the purportedly voluntary elections to use Defendants' services/assistance (for, *e.g.*, insurance, fuel optimization, routes, etc.), refuse loads, and/or take time off, they are unable to make enough money to be profitable and often wind up making no money at all because Defendants' deductions exceed their earnings.

107.    TransAm's statements/representations during and after recruitment and during and after orientation about whether or not there are company driver jobs available constitute deceptive acts and practices under the KCPA.

108.    *Inter alia*, TransAm makes representations during recruitment that company driver jobs are available even knowing or with reason to know that company driver jobs are not available and/or will not be offered to the drivers when they attend orientation.

109.     TransAm also makes representations during and after orientation that company trucks are not available even if they are available, with the intention of inducing individuals to become lease drivers instead.

110.     TransAm's statements/representations during and after recruitment and during and after orientation about whether or not there are company driver jobs available also constitute unconscionable acts and practices under the KCPA.

111.     *Inter alia*, TransAm's statements/representations have been made with TransAm's and Jacobson Holdings' knowledge or reason to know that:  (a) the individuals would not receive a material benefit from the transaction (because TransAm in fact would not provide the individuals with company driver jobs and/or because the lease driver jobs are not financially beneficial for the drivers); (b) there was no reasonable probability that the individuals would receive the company driver jobs promised to them and/or there was no reasonable probability that the lease drivers would be profitable for the drivers; and (c) the transaction was excessively one-sided in favor of TransAm and Jacobson Holdings, etc.

112.     The circumstances of contract formation are also unconscionable, *inter alia*: (a) Defendants use pre-printed boilerplate adhesion contracts which drivers are required to sign; (b) there is time pressure to sign a large stack of documents, and drivers are not able to take home and review their contracts before signing; (c) the sample contracts given to drivers to review are often different from the contracts they actually sign; (d) there is unequal bargaining power between Defendants and the individuals; (e) the contracts contain many one-sided and unfair terms; (f) drivers are

often hundreds or thousands of miles from home and, if they do not sign, they have to pay their own way home; and (g) the contracts themselves contain deliberately ambiguous, misleading, and inaccurate information concerning the terms of the lease driver relationship.

113.    TransAm's and Jacobson Holdings' deceptive acts and practices and unconscionable acts and practices have been in connection with a consumer transaction, namely the recruitment of individuals to attend orientation and provide services as truck drivers for Defendants.

114.    TransAm's and Jacobson Holdings' actions have caused substantial harm to drivers and have adversely affected their legal rights, including but not limited to: (a) causing individuals to attend and complete orientation and then failing to provide them with the promised job; (b) causing individuals to incur debts, expenses, and deductions from pay as independent contractor drivers that they would not have incurred as company drivers; (c) depriving individuals of wages and minimum wages that they would have received as company drivers; and/or (d) causing individuals to incur the expense of their travel home if they are not given company driver jobs.

115.    For example, Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. incurred extensive expenses as lease drivers that they would not have incurred as company drivers, including but not limited to deductions from earnings that they would not have have paid as company drivers, expenses for maintenance and repairs to the trucks they drove, forfeiture of their last paychecks, and

thousands of dollars of debt obligations imposed on them by TransAm after their employment.

116.    As lease drivers, Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. and other similarly situated individuals often earned less in net income than they would have earned as company drivers, including some pay periods in which they received no income or were paid less than the federal minimum wage per compensable hour worked.

117.    Plaintiff Faraji Arturo Council  ultimately did not take a position with TransAm because they did not provide him with the promised company driver position, causing him to suffer harm and damages including lost time that he spent in orientation and subsequent training and waiting, and the expenses he incurred to travel home from the orientation facilities.

118.    Defendants' actions are in violation of the KCPA.

**D.    Facts relating to miclassification of lease drivers as independent contractors instead of as employees.**

119.    TransAm and Jacobson Holdings prefer to employ lease drivers over company drivers because they can pass along the costs of doing business to their allegedly "independent contractor" drivers, while retaining complete control over revenue, thereby minimizing (if not eliminating) their own risk of losses.

120.    Lease drivers, however, are not independent of TransAm or Jacobson Holdings and are – in everything but name – employees of TransAm and Jacobson Holdings.

121.    In order to be hired as lease drivers by TransAm, drivers need to lease a truck from ONE Leasing, another of Jacobson Holdings' wholly owned and integrated subsidiaries.

122.    In order to lease trucks from ONE Leasing, drivers must sign a standard-form contract with ONE Leasing titled "Equipment Lease Agreement."

123.    Drivers must also sign a standard-form contract with TransAm titled "Independent Contractor Owner-Operator Agreement."

124.    TransAm's Independent Contractor Owner-Operator Agreement (IC Agreement) states that drivers are to be compensated at a fixed rate per dispatched mile.

125.    All terms of the contracts with TransAm and ONE Leasing are presented to drivers on a take-it-or-leave-it basis with no opportunity for negotiation.

126.    On information and belief, Defendants require all members of the putative class to enter into these same or similar agreements under the same or similar circumstances.

127.    The IC Agreement makes numerous conclusory statements to further the fiction that Defendants' lease drivers are not employees, but the governing terms of the Agreement clearly retain for Defendants total operational and financial control:

   a.  TransAm acknowledges that it has exclusive control and use of the leased truck and assumes complete responsibility for the operation of the leased truck;

b.  Lease drivers may only drive their leased trucks for TransAm; in order to drive their leased trucks for a different trucking company, lease drivers must obtain prior written approval from TransAm;

c.  Lease drivers must obtain prior written approval from TransAm to have passengers in their trucks;

d.  Lease drivers are expressly prohibited from carrying a firearm in their leased trucks, even when not under dispatch by TransAm;

e.  Lease drivers must allow TransAm to deduct $500 from their compensation within the first 90 days of the contract for use as a "Performance Escrow," from which TransAm may pay itself for what it considers to be drivers' obligations under the contract, as determined by TransAm unilaterally; and

f.  Lease drivers must agree to immediately return damaged trailers to TransAm's home terminal in Olathe, Kansas, or "to such other location as authorized and directed" by TransAm.

128.    In fact, as well as under the contract, Defendants control and direct the performance of lease drivers' work:

a.  Defendants' driver managers assign loads to drivers, effectively controlling drivers' schedules;

b.  Defendants do not allow drivers to book their own loads;

c.  If a driver manager does not assign a load to a driver, the driver is forced to wait without compensation for the next load;

25

d.  Although Defendants claim that they do not use a "forced dispatch" system, they effectively force dispatch by punishing drivers if they reject loads by withholding additional loads and/or by only assigning low-paying loads that do not cover costs; and

e.  Because of the structure of lease payments, Defendants' drivers have no choice but to take shipments as directed by Defendants or they will quickly fall into default.

129.   Under the KWPA test to determine whether an employer/employee relationship exists, lease drivers are the employees of Defendants.

130.   Under the FLSA test to determine whether an employer/employee relationship exists, lease drivers are the employees of Defendants.

**E.     Facts relating to deductions from wages made unlawful by the KWPA.**

131.   Under the KWPA, an employer may only take deductions from wages if an employer has signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee.

132.   Under the KWPA's regulations, only certain deductions are deemed "for a lawful purpose accruing to the benefit of the employee"; if not specifically authorized by these regulations or other law, a deduction is unlawful.

133.   Even if otherwise allowed by the KWPA, the KWPA explicitly prohibits employers from making deductions from wages that bring wages below the applicable minimum wage, regardless of whether the applicable minimum wage is established by Kansas law or by the FLSA.

134.    Pursuant to their IC Agreements with TransAm, lease drivers are responsible for paying for expenses including but not limited to:  fuel, fuel taxes, highway use taxes, maintenance, and repairs.

135.    The IC Agreement allegedly authorizes TransAm to deduct the lease payments owed to ONE Leasing from driver compensation, along with deductions for bobtail and deadhead insurance premiums, occupational accident insurance premiums, a weekly fee for use of TransAm's Pass Plus - Scale bypass transponder services, and a weekly fee for fuel optimization services.

136.    The IC Agreement acknowledges that these deductions may result in "Negative Settlement Balances," i.e. settlements in which the deductions from pay exceed the mileage rate earned by the driver, such that instead of receiving compensation for work performed, the driver accrues a debt to TransAm; in such circumstances the driver must pay TransAm interest – to be deducted from future settlements.

137.    Upon termination, Defendants make deductions from drivers' final paychecks that zero out their earnings.  Kirk Roberts and Carl McRoberts Jr. received letters from TransAm documenting this practice.

138.    The deductions that Defendants take from lease drivers' wages are not authorized by regulations or other law and are not for a lawful purpose accruing to the employee.

139.    The deductions for insurance, maintenance, and repairs do not accrue to the benefit of the employee because they are made so that Defendants will not bear the

cost of breakage or bear any loss resulting from burglaries, robberies, or alleged negligent acts.

140.    The deductions for various items described in the IC agreement as voluntary are not for a lawful purposes accruing to the employee because they are not necessary to the performance of the assigned duties and are customarily supplied by the employer.

141.    As a result of the numerous deductions taken from drivers' compensation, there are weeks in which lease drivers receive wages that are less than the federal minimum, or in which they receive no wages at all, in violation of the KWPA.

**E.    Facts relating to lease drivers' unpaid minimum wages in violation of the FLSA.**

142.    Defendants' lease drivers frequently spend long periods of time on the road, away from their homes and families.

143.    Defendants' lease drivers frequently perform continuous tours of duty in excess of 48 hours.

144.    Under the FLSA, drivers are entitled to be paid at least the federal minimum wage for all time spent on continuous tours of duty, with the exception of 8 hours per 24-hour period for sleeping and bona fide meal breaks.

145.    Defendants' method of paying lease drivers a fixed rate per mile (net deductions) far too often results in lease drivers receiving less than the federal minimum wage for all compensable working time.

146.    Moreover, Defendants violate the FLSA by failing to pay lease drivers their wages free and clear, because Defendant engages in a practice of withholding compensation in order to pay itself for prior weeks in which drivers had a negative settlement balance.

**E.    Facts relating to company drivers' unpaid minimum wages in violation of the FLSA.**

147.    TransAm pays its company drivers mileage-based pay.

148.    On information and belief, this pay is intended to compensate company drivers at a rate no less than the federal minimum wage for on-duty driving time and on-duty non-driving time.

149.    Under the FLSA, however, truck drivers are entitled to receive at least the federal minimum wage for hours that TransAm does not intend its mileage-based pay to cover, including but not limited to (a) time spent in the sleeper berth and/or passenger seat of the truck when driving as a team, (b) time when the truck is stopped, but drivers remain responsible for responding to communications from dispatch, monitoring the safety and security of their trucks and loads, and otherwise complying with TransAm policies, and (c) on-call time while waiting for dispatch to assign the driver(s) another load.

150.    TransAm compensates drivers for this time at $0 per hour, which violates the FLSA.

151.     Additionally/alternatively, the weekly wages drivers receive do not always adequately compensate them for all compensable hours at the federal minimum wage.

## V.     FLSA COLLECTIVE ACTION ALLEGATIONS (ORIENTATION WAGES)

152.     Plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, David Coleman, and Carl McRoberts Jr. assert their claims against Defendant TransAm under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated employees currently and formerly employed by TransAm.

153.     Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the collective for which they seek certification under section 216(b) as follows:

> ALL INDIVIDUALS WHO HAVE ATTENDED ORIENTATION AND/OR TRAINING FOR TRANSAM DURING THE APPLICABLE STATUTORY PERIOD AND HAVE NOT RECEIVED WAGES FOR ALL HOURS WORKED AT THE FEDERAL MINIMUM WAGE.

154.     These claims meet the requirements for collective action certification under the FLSA.

155.     All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they all attended orientation to become truck drivers for TransAm and all suffered from the same unlawful policies, specifically that they were not paid at least minimum wage for all orientation time.

## VI.    FLORIDA CONSTITUTION RULE 23 CLASS ACTION ALLEGATIONS (ORIENTATION WAGES)

156.     Plaintiffs Terrence Colvin-Williams and David Coleman assert their claims against Defendant TransAm under the Florida Constitution on behalf of a class pursuant to Fed. R. Civ. P. 23.

157.     Plaintiffs sent notice of this claim to TransAm more than fifteen days prior to the filing of the First Amended Complaint; in its response, TransAm failed to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of Plaintiffs, as required by Fla. Stat. § 448.110.

158.     Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the following class:

> ALL INDIVIDUALS WHO HAVE ATTENDED ORIENTATION AND/OR TRAINING FOR TRANSAM IN FLORIDA DURING THE APPLICABLE STATUTORY PERIOD AND HAVE NOT RECEIVED WAGES FOR ALL HOURS WORKED AT THE FLORIDA MINIMUM WAGE.

159.     All potential Rule 23 plaintiffs are similarly situated with respect to the Florida orientation claims because they all attended orientation to become truck drivers for TransAm in Florida and all suffered from the same unlawful policies, specifically that they were not paid at least minimum wage for all orientation time.

160.     The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members is in the thousands.

161.    There are issues of law and fact common to all class members, because TransAm's orientation practices apply to all class members.  The common questions of law and fact predominate over any questions affecting individual class members.

162.    The claims of the named Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

163.    The named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

164.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiffs as well as every absent member of the proposed class.

165.    A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges uniform deceptive practices; many class members may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claim.

**VII.    KANSAS CONSUMER PROTECTION ACT RULE 23 CLASS ACTION ALLEGATIONS**

166.     Plaintiffs Kirk Roberts, Faraji Arturo Council, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. assert their claims against Defendant TransAm under the KCPA on behalf of a class pursuant to Fed. R. Civ. P. 23.

167.     Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the following class:

> ALL INDIVIDUALS WHO ATTENDED ORIENTATION TO BECOME COMPANY DRIVERS BUT WHO DID NOT BECOME COMPANY DRIVERS.

168.     All potential Rule 23 plaintiffs are similarly situated with respect to the KCPA claims because they all suffered from the same unlawful policies and practices, including, *inter alia*:

a.  TransAm recruiters making representations during recruitment that company driver jobs are available;

b.  TransAm employees making representations during and after orientation that company driver jobs are not available and/or statements pressuring individuals to take lease driver positions instead;

c.  TransAm's misrepresentations, omissions, and/or concealments of fact regarding lease driver and company driver positions;

d.  Unconscionable circumstances of contract formation; and

e.  Harm to individuals because of these actions.

169.     The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members is in the thousands.

170.     There are issues of law and fact common to all class members, because TransAm's recruitment, orientation, and driver placement practices and policies apply to all class members.  The common questions of law and fact predominate over any questions affecting individual class members.

171.     The claims of the named Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

172.     The named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

173.     The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiffs as well as every absent member of the proposed class.

174.     A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges uniform deceptive practices; many class members may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claim.

175.     Plaintiffs have given notice of this action to the Kansas Attorney General, pursuant to K.S. § 50-634(g).

## VII.    KANSAS WAGE PAYMENT ACT RULE 23 CLASS ACTION ALLEGATIONS (LEASE DRIVER WAGES)

176.    Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. assert their claim against Defendants TransAm and ONE Leasing under the KWPA on behalf of a class pursuant to Fed. R. Civ. P. 23.

177.    Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the following class:

> ALL INDIVIDUALS WHO WORKED FOR DEFENDANTS AS DRIVERS PURSUANT TO AN INDEPENDENT CONTRACTOR AGREEMENT THAT THEY THEMSELVES SIGNED WHILE LEASING THEIR TRUCK FROM DEFENDANTS.

178.    All potential Rule 23 plaintiffs are similarly situated with respect to the KWPA claims because they all suffered from the same unlawful policies, including policies that they must pay for expenses through wage deductions including, *inter alia*, lease payments, insurance, maintenance, repairs, fuel, taxes, insurance, maintenance, and repairs, which are unlawful under the KWPA.

179.    The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members is in the thousands.

180.    There are issues of law and fact common to all class members, because Defendants' lease driver compensation practices apply to all class members.  The common questions of law and fact predominate over any questions affecting individual class members.

181.    The claims of the named Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices.

182.    The named Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

183.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to the named Plaintiffs as well as every absent member of the proposed class.

184.    A class action is superior in this case for several reasons including, but not limited to, that:  the case challenges uniform compensation practices; many class members may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claim.

## VII.    FLSA COLLECTIVE ACTION ALLEGATIONS (LEASE DRIVER WAGES)

185.    Plaintiffs Kirk Roberts, Terrence Colvin-Williams, Reginald Bradley, and Carl McRoberts Jr. asserts their lease driver minimum wages claim under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated employees currently and formerly employed by Defendant.

186.    Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the collective for which they seek certification under section 216(b) as follows:

> ALL INDIVIDUALS WHO WORKED FOR DEFENDANTS AS DRIVERS PURSUANT TO AN INDEPENDENT CONTRACTOR AGREEMENT THAT THEY THEMSELVES SIGNED WHILE LEASING THEIR TRUCK FROM DEFENDANTS.

187.    These claims meet the requirements for collective action certification under the FLSA.

188.    All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they all worked as lease drivers for Defendants and all suffered from the same unlawful policies, specifically that Defendants took deductions from their wages that brought their pay below the federal minimum.

## VII.    FLSA COLLECTIVE ACTION ALLEGATIONS (COMPANY DRIVER WAGES)

189.    Plaintiff David Coleman asserts his company driver minimum wages claim against Defendant TransAm under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all other similarly situated employees currently and formerly employed by Defendant.

190.    Pending any modifications necessitated by discovery, the named Plaintiff preliminarily defines the collective for which he seeks certification under section 216(b) as follows:

> ALL INDIVIDUALS WHO HAVE WORKED AS COMPANY DRIVERS FOR TRANSAM DURING THE APPLICABLE STATUTORY PERIOD

AND HAVE NOT RECEIVED WAGES FOR ALL HOURS WORKED AT THE FEDERAL MINIMUM WAGE.

191.    These claims meet the requirements for collective action certification under the FLSA.

192.    All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they all worked as company drivers for TransAm and all suffered from the same unlawful policies, specifically that they were not paid at least the minimum wage for compensable working time.

## COUNT I – FAIR LABOR STANDARDS ACT (FLSA)
### (Orientation Minimum Wage Claim)

Defendants TransAm's and Jacobson Holdings' conduct, in failing to pay drivers at least minimum wage for all hours worked during orientation violates the FLSA, 29 U.S.C. § 201, et seq.  This claim is brought against Defendants TransAm and Jacobson Holdings on behalf of the named Plaintiffs and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

## COUNT II – VIOLATION OF ARTICLE X, SECTION 24
### OF THE FLORIDA CONSTITUTION
### (Florida Orientation Minimum Wage Claim)

Defendants TransAm's and Jacobson Holdings' conduct, as set forth above, constitute a willful violation of Article X, Section 24 of the Florida Constitution. Through the actions described above, TransAm and Jacobson Holdings have violated the Florida Constitution by failing to pay wages, including minimum wages, to individuals for attending TransAm's unpaid orientation in Florida to work as drivers

for TransAm.  This claim is brought against Defendants TransAm and Jacobson

Holdings on behalf of the name Plaintiffs and all similarly situated individuals.

### COUNT III – KANSAS CONSUMER PROTECTION ACT
### (Unfair and Deceptive Practices Claim)

Defendants TransAm's and Jacobson Holdings' conduct, as set forth above,

violates the KCPA.  Through the actions described above, TransAm and Jacobson

Holdings have violated the provisions of KCPA, including K.S. §§ 50-626 and 50-627.

This claim is brought against Defendant TransAm and Jacobson Holdings on behalf of

the named Plaintiffs and all other similarly situated individuals pursuant to K.S. § 50-

634.

### COUNT IV – KANSAS WAGE PAYMENT ACT
### (Lease Driver Unlawful Deductions Claim)

Defendants TransAm, ONE Leasing, and Jacobson Holdings have engaged in

conduct, as set forth above, that violates the KWPA.  Through the actions described

above, Defendants have violated the provisions of KWPA, including K.S. §§ 44-314-315,

319.  This claim is brought against Defendants TransAm, ONE Leasing, and Jacobson

Holdings on behalf of the named Plaintiffs and all other similarly situated individuals

pursuant to K.S. § 44-324.

### COUNT V – FAIR LABOR STANDARDS ACT
### (Lease Driver Minimum Wage Claim)

Defendants TransAm, ONE Leasing, and Jacobson Holdings have engaged in

conduct, by taking deductions from lease driver wages that result in drivers being

compensated at less than the minimum wage for all hours worked, that violates the

FLSA, 29 U.S.C. § 201, *et seq.* This claim is brought against Defendants TransAm, ONE Leasing, and Jacobson Holdings on behalf of the named Plaintiffs and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

### COUNT VI – FAIR LABOR STANDARDS ACT
### (Company Driver Minimum Wage Claim)

Defendants TransAm's and Jacobson Holdings' conduct, in failing to pay company drivers at least minimum wage for all hours worked violates the FLSA, 29 U.S.C. § 201, et seq. This claim is brought against Defendants TransAm and Jacobson Holdings on behalf of the named Plaintiffs and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

### DEMAND FOR JURY TRIAL

The Plaintiffs demand a jury for all issues so triable.

### LOCATION OF JURY TRIAL

The location of this trial should be Kansas City, Kansas.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter the following relief:

a.   Certification of the proposed opt-in classes pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*;

b.   Permission for Plaintiffs to notify similarly situated individuals of their right to opt in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

c.      An award of damages for all minimum wages that are due to the named

Plaintiffs and all similarly situated individuals under the FLSA;

d.      Statutory liquidated damages under the FLSA;

e.      A finding that Defendants' violation of the FLSA was willful and that,

therefore, the statute of limitations for the FLSA claim is three years;

f.      Certification of the Florida orientation wages claim as a class action under

Fed. R. Civ. P. 23;

g.      A finding that TransAm and Jacobson Holdings have violated Article X,

Section 24 of the Florida Constitution by failing to pay wages to individuals

for attending orientation in Florida to work as drivers for TransAm;

h.      Statutory liquidated damages under Article X, Section 24 of the Florida

Constitution;

i.      A finding that TransAm and Jacobson Holdings has acted willfully in

violating Article X, Section 24 of the Florida Constitution;

j.      A finding that the statute of limitations under Article X, Section 24 of the

Florida Constitution is five years because of TransAm's willful violation of

Article X, Section 24 of the Florida Constitution;

k.      An award to the Plaintiffs of the full Florida minimum wage for all hours of

orientation attended in Florida since March 1, 2016;

l.      Certification of the KCPA claim as a class action under Fed. R. Civ. P. 23;

m.      An award of damages under the KCPA relating to aggrievement or legal harm caused by Defendants TransAm's and Jacobson Holdings' deceptive and/or unconscionable acts and practices;

n.      A declaratory judgment that Defendants TransAm's and Jacobson Holdings' actions, as set forth herein, are unlawful under the KCPA;

o.      Appropriate ancillary relief under the KCPA;

p.      A finding that Defendants TransAm's and Jacobson Holdings' violation of the KCPA was willful;

q.      Civil penalties pursuant to K.S. § 50-636, as appropriate;

r.      Certification of the KWPA claim as a class action under Fed. R. Civ. P. 23;

s.      An award of damages for all wages due under the KWPA;

t.      A finding that Defendants TransAm's, ONE Leasing's and Jacobson Holdings' violation of the KWPA was willful and that, therefore, Plaintiffs are entitled to penalties in an amount equal to 100% of unpaid wages;

u.      An injunction preventing Defendants from continuing the legal violations described herein, including but not limited to non-payment of minimum wages for orientation and training; deceptive and/or unconscionable acts and practices relating to recruitment of drivers and availability of company driver positions; unlawful deductions from lease drivers' wages; and failure to pay drivers for all hours worked;

v.      An award of attorneys' fees and costs;

w.      Pre- and post-judgment interest; and

x.      Any other relief to which the named Plaintiffs and similarly situated

individuals may be entitled.

Respectfully submitted,

KIRK ROBERTS, FARAJI ARTURO COUNCIL,
TERRENCE COLVIN-WILLIAMS, REGINALD
BRADLEY, DAVID COLEMAN, and CARL
McROBERTS JR., on behalf of themselves and
all others similarly situated,

By their attorneys,

 */s/ Brendan J. Donelon*
Brendan J. Donelon, KS #17420
DONELON, P.C.
4600 Madison, Ste. 810
Kansas City, Missouri 64112
816-221-7100
Fax: 816-709-1044
brendan@donelonpc.con

Hillary Schwab, BBO #666029*
Brant Casavant, BBO #672614*
Rachel Smit, BBO #688294*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
www.fairworklaw.com
Email: hillary@fairworklaw.com,
brant@fairworklaw.com,
rachel@fairworklaw.com

*Admitted pro hac vice*

Dated: January 7, 2022

## CERTIFICATE OF SERVICE

I certify that on January 7, 2022, I caused a true copy of this document to be served through Notice of Electronic Filing on all parties and their counsel who are Filing Users. I further certify that on January 7, 2022, I caused a true copy of this document to be served by e-mail on counsel for Jacobson Holdings, Inc., as follows:

Shannon D. Johnson
sjohnson@sb-kc.com
Gregory B. Whiston
gwhiston@sb-kc.com
Curry P. Sexton
csexton@sb-kc.com

_/s/ Brendan J. Donelon_
Brendan J. Donelon